# Alabama Great Southern Railroad Co. v. Richie.

*Action to recover Damages for Personal Injuries.*

1. *Evidence; irrelevant testimony.*—In an action by a brakeman against a railroad company to recover damages for personal injuries, alleged to have been caused by the negligence of the engineer, in backing his train with too much force, while the plaintiff was uncoupling cars in the discharge of his duties, testimony that there were no brakemen on the train at the time of the accident, and that if there had been other brakemen on the train, and they had applied the brakes, the accident could have been averted, is irrelevant, and its admission is error.

2. *Duty of engineer after discovering perilous position of plaintiff.*—In In an action by a brakeman against a railroad company for personal injuries, alleged to have been caused by the negligence of the engi-

[Alabama Great Southern Railroad Co. v. Richie.]

neer, if the evidence shows that both plaintiff and engineer were guilty of negligence, proximately contributing to the accident, there should be a verdict for the defendant, unless it is further shown that the engineer knew, or had reason to believe, that the plaintiff was exposed to the peril from which the injury resulted, and that he failed, after he had such knowledge or reason to believe such fact, to exercise that care and diligence which a man of ordinary prudence would have exercised under like circumstances to have prevented the accident, notwithstanding plaintiff's own want of care.

3. *Duty of brakeman in uncoupling cars; engineer's right to assume its observance.*—If, in the discharge of his duties, it is necessary for a brakeman to go between the cars to uncouple them, it is likewise his duty to keep his person from the point of contact between the dead-woods, and this latter being a duty which is feasible while uncoupling the cars, the engineer has a right to assume that it will be performed, and of consequence that it would not endanger the brakeman to back a train while standing on a grade, so as to give "the slack" needed to uncouple the cars.

4. *Same.*—Where there is evidence that after the cars were uncoupled, and while plaintiff was laying the coupling pin on the draw-head of the car in front, such car overtook the detached cars, and the plaintiff's arm was caught between the draw-heads, the request that if the plaintiff was injured by his failure to adopt the safer course, he can not recover, is well refused, if it does not appear that he had time to comprehend the safer way, and to adjust himself accordingly.

5. *Charge as to the duty of plaintiff.* - If, in an action by a brakeman against a railroad company for injuries, alleged to have been received while uncoupling cars, on account of the negligence of the engineer, there is evidence from which the jury might believe that the plaintiff's danger was not obvious to him, it is error to instruct the jury, that "If the jury believe from the evidence that it was impossible for plaintiff to have done this work without getting his arm in between the dead-woods, then the court charges the jury that he should not have done the work at all, and he can not recover in this action, if he attempted to do the work, if it were impossible to do so, and while so engaged was injured."

6. *Charge as to obeying the signals of the conductor.*—A charge that assumes that the engineer can not be negligent in operating his engine, if he does so in prompt and careful compliance with the signals of the conductor, is erroneous, where an act, however performed, would be a negligent one; and it is not for the court to assume the truthfulness of the testimony of the conductor that the signal given on a certain occasion was a proper one.

7. *Abstract, argumentative and misleading charges.*—Charges that are abstract, argumentative or misleading are properly refused.

APPEAL from City Court of Birmingham.

Tried before the Hon. H. A. SHARPE.

This is an action by the appellee, Wm. E. Richie, against the Alabama Great Southern Railroad Company to recover damages for personal injuries to plaintiff.

The ground of the complaint, the negligence alleged, and the facts necessary to a full understanding of the decision are sufficiently stated in the opinion.

On the examination of one J. B. Lasselle as a witness for the defendant, and after testifying that he was the conductor on defendant's train at the time of the injury to plaintiff, and had been in the railroad business about nine years, he was asked by the plaintiff on cross examination the following question : "Let us suppose that this car was standing on the incline and signal was given to give the slack, that is, to push the link in so the pin could be pulled out. Now, in a place of this kind, where the car was very heavy, and the train of cars very long, and the train was a very heavy train, as you represented, suppose the brakeman had been at the brakes, would there have been any difficulty by putting on the brakes, and by the use of the engine, to stop the train at any point?" This question was objected to by the defendant, on the ground that the complaint was that the engineer negligently jammed these cars back, and the examination of the defendant was confined simply to the allegations of the complaint, and that this question attempted now to place upon the railroad some other negligence than that charged in the complaint. The court overruled the objection, and the defendant excepted.

On the examination of this witness in rebuttal by the defendant, and after he had testified that the engineer, who was in charge of the engine at the time of the accident, was a competent engineer, and that he, the witness, had known him for several years and had always found him careful and competent, counsel for the defendant then asked him : "State whether or not he did what competent engineers usually do under like and similar circumstances, when this accident happened to the plaintiff?" The plaintiff objected to this question, which objection was sustained by the court and the defendant excepted. Counsel for the defendant then asked witness the following questions: "State whether or not he did anything more than what is ordinarily done under like circumstances by a competent engineer?" "Did he do at that time what a careful and skillful engineer would do under like circumstances?" "In obeying the signal which you, as a conductor, gave this engineer, could he have done otherwise than he did do?" Plaintiff objected to each of these questions when asked, each of which objections the court sustained, and the defendant separately excepted to each of the several rulings of the court.

On the examination by the defendant of T. M. Glazier, who was the engineer on the train at the time of the accident, and on testifying that he had been an engineer for over four years, the defendant's counsel asked him the

following question: "State whether or not the movements you made with that train were the proper movements, and whether or not those movements were carefully made?" This question was objected to by the plaintiff, which objection the court sustained, and the defendant excepted. The defendant's counsel then asked this witness the following question: "State whether or not the movements of this train were the proper movements for uncoupling these cars at that place?" The court sustained the plaintiff's objection to this question, and defendant excepted. On the cross examination of this witness, the plaintiff's counsel asked him the following question: "Were there any brakemen on that train that day?" The defendant objected to this question because the complaint alleged that it was the carelessness of the engineer which caused the accident, and not anything that pertained to the action or negligence of the brakeman on the train, and this question called for evidence irrelevant to the issue formed under the pleadings. The court overruled this objection, and the defendant duly excepted. The witness answered that there were no brakemen on the train while they were switching.

Among the written charges given at the request of the plaintiff, to the giving of each of which the defendant separately excepted, were the following: (8.) "Railroads, like other corporations and persons, have the right to adopt reasonable rules and regulations for the government of their employes, and for their own protection; but they can not stipulate from immunity from liability for their own wrongful negligence. A rule which imposes upon an employe to look after and be responsible for his own safety contravenes the law itself which fixes the liability of railroads for negligence causing injury or death to their employe." (14.) "Even if it were shown that the negligence of the plaintiff proximately contributed to the injury complained of, proof that the accident would not have happened, notwithstanding the plaintiff's negligence, but for the want of ordinary care on the part of the engineer, after the engineer had knowledge that the plaintiff was in danger, if he did have such knowledge, the defendant company would still be liable and the plaintiff entitled to recover."

The defendant requested the following written charges, and separately excepted to the court's refusal to give each of them as asked: (1.) "The court charges the jury that the engineer of this train had the right to expect that the plaintiff would keep his arm in such a position as not to get it mashed between the cars; and if the jury believed from

the evidence that the movements of the engine, by the engineer in this case, were such as were usually made under such circumstances, and that those movements were proper and carefully made, then they must find a verdict for the defendant." (11.) "The court charges the jury that it was the duty of the plaintiff to take into account the surroundings and perils attendant upon the nature of the services in which he was engaged, at the time he received his injuries, and to bestow such care and watchfulness as an ordinarily prudent person would have exercised under like circumstances in reference to their own safety; and if the jury further believe from the evidence that the plaintiff failed and neglected at the time when he was between the cars to bestow that degree of care, watchfulness and caution in respect to his own safety, in view of the surrounding danger, that an ordinarily careful and prudent person would have exercised under like circumstances, and that his failure in this respect contributed proximately to his injury, then the jury must find a verdict for the defendant." (14.) "If the jury believe from the evidence that it was impossible for plaintiff to have done this work without getting his arm in between the dead-woods, then the court charges the jury that he should not have done the work at all, and he can not recover in this action, if he attempted to do the work, if it were impossible to do so, and while so engaged was injured." (18.) "The court charges the jury that if they believe from the evidence that the engineer promptly and carefully obeyed the signals given to him by the conductor, then they must find a verdict for the defendant." (19.) "The court charges the jury that if there are two ways of doing a duty, one more dangerous than the other, an employee must adopt the safer course, and in this case, if they believed from the evidence, that in uncoupling these cars the plaintiff could have raised himself higher by placing his foot on the cross-tie on the outside of the rail, instead of putting his foot on the ground on the road bed, and if they believe further that such failure to put his foot on the cross-tie on the outside contributed proximately to his injury, he can not recover, unless they further believe that the engineer was guilty of willful, gross or wanton negligence, such as would overcome contributory negligence." (20.) "The court charges the jury that the case of the *Louisville & Nashville Railroad Company v. Watson*, which is read by counsel for plaintiff as a part of his argument, does not apply to the case at bar, the distinction being that in that case plaintiff was making a coupling in which he was obliged to put his

[Alabama Great Southern Railroad Co. v. Richie.]

hand between the draw-heads, while in this case plaintiff was uncoupling the cars, and was not compelled to put his arm or hand in between the draw-heads or the dead-woods."

There was judgment for the plaintiff. Defendant appeals; and assigns as error the various rulings of the City Court upon the evidence, and the charges given and refused.

A. G. SMITH, for appellant.—Charge 14 asked by the plaintiff should have been refused. It is well settled by the decisions in this State, that if a person is injured, and he was negligent and his own negligence contributed proximately to his injury, he can not recover, unless the person or corporation that did the injury, or its servants, were guilty of gross, wanton or reckless negligence, such as would amount to an intentional wrong. *R. R. Co. v. Kornegay*, 92 Ala. 228; *R. R. Co. v. O'Shields*, 90 Ala. 29; *R. R. Co. v. Crawford*, 89 Ala. 240; *R. R. Co. v. Webb*, 90 Ala. 185; *R. R. Co. v. Meadors*, 95 Ala. 137. The court erred in refusing to give to the jury charge No. 11, asked by the defendant. *M. & O. R. R. Co. v. George*, 94 Ala. 199. The general affirmative charge should have been given for the defendant. *R. R. Co. v. Ingram*, 98 Ala. 395; *M. & O. R. R. Co. v. George*, 94 Ala. 199; *R. R. Co. v. Orr*, 91 Ala. 548. An employee can not recover for an injury sustained when the danger is imminent and so obvious that a careful and prudent man would not incur the risk under the same circumstances. *R. R. Co. v. Walters*, 91 Ala. 435; *R. R. Co. v. Orr*, 91 Ala. 548; *Ry. Co. v. Holborn*, 84 Ala. 133. The court erred in refusing to give to the jury charge No. 19 requested by the defendant. The law is settled in this State that if there are two ways of discharging a service, one less dangerous than the other, the employee must select the least dangerous of the two. *R. R. Co. v. Walters*, 91 Ala. 435; *R. R. Co. v. Orr*, 91 Ala. 548; *R. R. Co. v. Holborn*, 84 Ala. 137; *R. R. Co. v. Graham*, 94 Ala. 545; *R. R. Co. v. George*. 94 Ala. 199.

JOHN M. MARTIN and CARL GANTZHORN, *contra*.—The court properly overruled the objection to evidence as to whether there were brakemen on the cars at the time of the accident, and if the brakes had been applied the injury would have been avoided.—*Helbig v. M. C. R. Co.* (Mich.) 48 N. W. 589; *K. C., M. & B. R. R. Co. v. Smith*, 90 Ala. 25; *Warden v. L. & N. R. R. Co.*, 94 Ala. 277; *Kellar v. Taylor*, 90 Ala. 289; *Brinkley v. The State*, 89 Ala. 34; *Graham v. Penn. Co.* 129 Penn. 149; 12 L. R. A. 293; 7 Amer. & Eng. Encyc. of Law,

493; *McDonald v. The State*, (N. Y.), 27 N. E. 358; *Robinson v. Waupaca*, (Wis.) 46 N. W. 809. Charge 8 was properly given for the plaintiff.—*L. & N. R. R. Co. v. Orr*, 91 Ala. 548; *R. & D. R. R. Co. v. Jones*, 92 Ala. 218; *Hissong v. R. & D. R. R. Co.*, 91 Ala. 514; *Williams v. S. & N. R. R. Co.*, 91 Ala. 635. Charge 14 requested by the plaintiff was properly given Plaintiff's contributory negligence does not bar a recovery, where it is shown that he was in danger, and the fellow servant knew of this danger, but failed to use ordinary care, and that, by reason of such failure, plaintiff was injured.— *L. & N. R. R. Co. v. Watson*, 90 Ala. 68; *Hissong v. R. & D. R. R. Co.*, 91 Ala. 514; *Gilliam v. S. & N. R. R. Co.*, 70 Ala. 268; *M. & E. R. R. Co. v. Stewart*, 91 Ala. 421. Charge 1 asked by the defendant was properly refused.—*Carrington v. L. & N. R. R. Co.*, 88 Ala. 472; *Hussey v. The State*, 86 Ala. 34; *Snider v. Burks*, 84 Ala. 53; *E. T. Va. & Ga. R. R. Co. v. Thompson*, 94 Ala. 636; *Goodrich v. N. Y. C. & H. R. R. Co.*, 5 L. R. A. 750. Charge 11 was properly refused because it ignores the legal effect of the engineers negligence, which, in a proper case, will overcome the contributory negligence of the plaintiff.—*M. & E. R. R. Co. v. Stewart*, 91 Ala. 421; *L. & N. R. R. Co. v. Davis*, 91 Ala. 487; *M. & B. R. R. Co. v. Holborn*, 84 Ala. 133; *S. & N. Ala. R. R. Co. v. Donovan*, 84 Ala. 141. Charge 19 requested by the defendant was abstract, and, therefore, properly refused.— *Wilkinson v. Searcy*, 76 Ala. 176.

McCLELLAN, J.—Richie prosecutes this action against the Alabama Great Southern Railroad Company claiming damages for personal injuries suffered by him while in the employment of defendant and in the discharge of his duties as a brakeman. The averment is that these injuries resulted from the wrong and negligence of a certain *engineer* in the employment of the defendant and, at the time and place of the accident, in charge and control of an engine attached to the train on which plaintiff was a brakeman or, to be more specific, it is alleged that at the time and place mentioned the plaintiff and the conductor and engineer of the train were engaged in taking out of the train and leaving on a side track certain freight cars, and that "whilst so engaged, it became and was the duty of plaintiff to go and be between two of said freight cars for the purpose of uncoupling the same; and the plaintiff in the line of his duty accordingly did go between said cars, and whilst there, that is between the cars aforesaid, he, the said engineer, did wrongfully and negligenty drive and propel his

said engine and cars to, against and upon the said plaintiff, thereby, then and there, catching and crushing the arm of said plaintiff between two of said freight cars, whereby plaintiff sustained great loss," &c. This is the only averment of negligence to be found in the complaint. Evidence was introduced by the plaintiff tending to show that the train, from which it was his duty to uncouple the last or rear two cars, was when he set about the performance of this duty standing still on a heavy up grade, that because of this grade the connections or couplings between the cars were taught, that is that the cars were separated as far as the links would allow them to be; and that in order for him to pull the pin out of the link which connected the cars he was to uncouple with that next in front, it was necessary "for the engineer to give him what is called 'the slack,' that is to run the cars back some so as to loosen the links in order that the pin might be drawn;" that he gave the engineer a signal to do this; and his theory is, that the engineer propelled the cars back with too much force, so that after the slack had reached the link from which he was to draw the pin, the cars still attached to the engine went unnecessarily far down the grade, and when he was in the act of laying the pin down on the draw-head of the car in front, it overtook the detached car, and their dead-woods came together and, catching his arm between them, inflicted the injuries for which he sues. The evidence also tended to show that the cars on this grade had to be held in position, and were so held on this occasion, by the engine on which the brakes or steam jam had been applied, that when the engine was released from its brakes, and allowed to run of its own motion down the grade, the cars would all move at the same time and together, and hence that no slack could be given in this way, but to that end it was necessary to give the engine steam and force the forward cars back faster then they would roll of themselves, and in doing this slack would be given at each successive coupling as the greater momentum of the engine reached it. This was the mode adopted to give slack at the point of the intended uncoupling. There was conflicting evidence, or inference at least, as to whether this jamming back of the cars was necessary in this instance, and also, conceding such jamming in some degree to have been necessary, as to whether it was not unnecessarily hard; plaintiff's evidence tending to show that it moved the cars at which he was engaged about two car lengths down the grade, when a movement of a foot and half only could

have been made and would have been sufficient, or, as he expresses it, "the slack of a foot and a half would have been plenty to have come back at that time." The question thus being whether *the engineer* was negligent in jamming the cars too hard and too far down the track, the plaintiff was allowed, against defendant's objection, to prove that there was no brakeman on the train at the time, the others as well as plaintiff being employed about the switching; and also against defendant's objection, that, "in a place of this kind, where the car [grade] was very heavy, the train of cars very long, and the train was a very heavy train," if the brakemen had been at the brakes there would have been no difficulty "by putting on the brakes, and by the use of the engine, to stop the train at any point." We are unable to see that this evidence, that if brakemen had been at the brakes, they could have promptly stopped the train, can possibly perform any other office in this case than as tending to show that the defendant through its agents was negligent in not having brakemen on the cars at that time and place; that but for this negligence, the train could and would have been stopped before the dead-woods came together crushing plaintiff's arm, and hence, that in consequence of this negligence, which is not averred in the complaint, the defendant is liable, and the jury should so find. The fact that brakemen, if they had been in position, could have stopped the train has no tendency toward proving the alleged negligence of the engineer. It may have been proper to show the fact that the brakemen were not at the brakes, or that the car brakes were not relied on or used in this movement of the train, for the purpose of emphasizing before the jury that whatever was done or attempted to be done in moving and stopping the train was done or attempted by the engineer, and that, therefore, whatever was wrong or negligent in that behalf must have been due to the wrong or want of care and diligence of the engineer, and it was nowhere in the case pretended that the brakemen were in their places or that the brakes on the cars were resorted to; but to show that had they been there the train could have been stopped short of the accident was to show that somebody in defendant's employment was negligent in not having them there, and serves to inject into the case an issue of negligence *vel non* of which there is no hint in the pleadings. The court erred in the admission of this evidence.

We have considered the evidence in this record with great care with reference to the inquiry whether it involves any tendency to show negligence on the part of the engineer

in the premises. It would subserve no good end to discuss it in detail, and we will content ourselves in this connection with the statement of our conclusion, arrived at with some difficulty, and entertained with more misgivings as to its correctness than could be desired, that there is some evidence tending to show that the engineer was negligent to go to the jury. On the other hand, there is unquestionably a tendency of the evidence to show that the plaintiff himself was negligent and that, assuming the negligence of the engineer, the want of due care and diligence on the part of the plaintiff, as shown by this aspect of the testimony, contributed proximately to the injury sustained by him.

It being thus with the jury to find either that the engineer was or that he was not negligent, or, finding that he was negligent, to find further that plaintiff was not in the exercise of that prudence and diligence which a man of ordinary care and caution would have exercised under the circumstances; and if their conclusion was that both parties were guilty of wrong or negligence contributing proximately to the disastrous result, their duty was to return a verdict for the defendant, *unless* it was open to them, on the testimony, to further believe and find that the engineer knew or had reason to believe that the plaintiff was exposed to the peril from which the injury resulted, and failed, after he had this knowledge or reason to believe the fact, to exercise the care and diligence which a man of ordinary care and diligence would have exercised in the premises to save the plaintiff harmless in spite of his own want of care. Such failure under the circumstances hypothesized is deemed in the law, as frequently declared by this court, the equivalent of that indifference to threatened damnifying results, that wantonness, willfulness or conscious wrong, for injuries attributable to which the plaintiff may recover notwithstanding his own contributory negligence.

Very many of the rulings of the trial court proceeded, and can be sustained only, on the assumption that there was evidence in this case tending directly or through inference to show that the engineer with a knowledge of plaintiff's peril failed to exercise due care and diligence to save him from the consequences of his own negligence. The assumption is, in our opinion, unsurported and gratuitous. We are unable to find any such evidence in this record. There is no testimony which affords even an inference that the engineer ever knew or had reason to believe that the plaintiff was exposed to the danger from which he suffered the injuries counted on until after those injuries had been sustained. What he did

know, and all that he knew or had reason to believe, was that the plaintiff was between the cars. The danger incident to being between the cars simply was not the source of plaintiff's hurt. So long as the dead-woods were in tact—and they were so throughout the occurrences involved here—the plaintiff was not endangered by any thing the engineer did or omitted to do having relation merely to the plaintiff's presence there. Within the lines of the cars and between them there was, as against any thing that happened on this occasion, an absolutely safe place for plaintiff to be. There was also another place between the cars which, under any and all circumstances when the cars were moving or about to move, is infinitely more dangerous than the first mentioned; and it was from the peril incident to the plaintiff's being in this more dangerous place that the injuries ensued. Though between the cars, plaintiff would not have been hurt at all, but for being in this particular place of especial danger between them. If it was plaintiff's duty to be between the cars, it was equally his duty not to put himself at that spot between them at which the dead-woods came together. And it being the plaintiff's duty to keep his person free from the point of contact between these dead-woods, and a duty the performance of which was prompted by every sense and instinct of self preservation under the circumstances shown here, and which, for ought that the engineer could or did know, was entirely feasible and practical of performance, the engineer had a right to assume that it would be performed, and, of consequence, that it would not endanger plaintiff for him to move the train as he did move it, and was not even probably necessary to the conservation of plaintiff's safety that he should do any thing which he omitted to do or omit any thing which he in fact did; it being perfectly manifest that had plaintiff's person been outside of the dead-woods between the cars, as any reasonable man knowing he was in there would have supposed it to be, the conduct of the engineer would have involved no injury to him.

This case is essentially unlike the case of *Louisville & Nashville R. R. Co. v. Watson*, 90 Ala. 68, and *Hissong v. Richmond & Danville R. R. Co.*, 91 Ala. 514, upon which reliance is had by the appellee. In *Watson's Case* the engineer not only knew that the plaintiff was between the cars, but there was evidence from which the jury might have inferred that he knew or had reason to believe plaintiff's hand was between the bumpers of the cars—the draw-heads, which also performed the functions of dead-woods—and with this

knowledge caused the engine to "jump back"—the space between the bumpers being only a few inches—so suddenly and with such force as to allow no time for plaintiff to extricate himself. There is no such evidence here—that the engineer knew or had any reason to believe that plaintiff's arm was between the bumpers at all—and hence none of knowledge or reasonable belief on his part that plaintiff was in the perilous position from which alone he suffered. The same is substantially true of *Hissong's Case*. There the plaintiff had in effect informed the engineer that the work he was to do between the cars could not be done while they were in motion. The engineer accordingly stopped the train, and the plaintiff went between the cars, and while working at the coupling, supposing, as he had a right to do, that the train would not move until he so signalled the engineer, and acting, as the jury might have inferred, in a manner that was safe only on the assumption of the train remaining at rest, the engineer started his engine and moved the car over plaintiff's person. Having been requested to stop that the work might be done, after an effort to do it while his engine was in motion had failed, the clear implication to the engineer was that plaintiff had to be and was in a position which any movement of the train would render perilous, and he had no right to assume the safety of it. And in *Hissong's Case*, as in *Watson's*, the peril which culminated in the injury complained of was incident to the position in which the engineer knew, or had reason to believe, the plaintiff to be when he moved the train. Here, as we have seen, quite the reverse is true. The peril of this plaintiff was incident to a particular position which it was plaintiff's duty to avoid, which, so far as the engineer could know or have any reason to believe, there was no necessity or occasion for him to assume, and which there was nothing to suggest plaintiff's occupancy of to the engineer at the time he set the train in motion, or at any time while it was in motion. We are unable to say that the evidence affords any ground to impute to him such knowledge or reasonable belief as to the peril of plaintiff's position as that his subsequent conduct in the movements of the engine involved a want of ordinary care with reference thereto. And if this case is tried again on the evidence before us, but two issues will arise, namely, first, whether the engineer was originally negligent; and second, whether the plaintiff was guilty of contributory negligence, in allowing his arm to get between the dead-woods.

What we have said last above will suffice to indicate the grounds of our opinion that many of the charges refused to the defendant should have been given, and also the particular charges referred to.

The danger to plaintiff from putting his arm where it was caught between the dead-woods was not necessarily obvious to him, that is, the jury might have found that it was not, if they believed there was a second lurch of the train against the car that had been uncoupled, and hence charge 14 was properly refused.

Charges 15 and 17, requested for defendant, present questions that need not arise on another trial.

Charge 18 assumes that an engineer can not be negligent in operating his engine, if he does so in prompt and careful compliance with the signals of the conductor. This is not true where the act commanded, however performed, would be a negligent one, and it was not for the court to assume, as the giving of this charge would have involved its doing, that the testimony of the conductor, to the effect that the signals given by him on the occasion in question were the proper signals to be given and commanded the doing of proper acts by the engineer, was true.

The 19th charge of defendant's series was well refused. Its statement of the general proposition of law is, of course, sound; but we are not prepared to say that the rule stated is applicable to the facts therein hypothesized. If, under the circumstances, the plaintiff had time and occasion to see and comprehend that the safe way to lay the pin on the draw-head was to stand on the cross-tie, and had time to thus adjust himself, he should have done so; but these considerations are not hypothesized in the instruction as framed.

Charge 20 is in the nature of an argument, and was well refused on that ground.

Of the charges given for plaintiff that numbered 8 may have involved a tendency to mislead as to the true interpretation of the rule of the defendant company, which was put in evidence, but is not otherwise objectionable; and that numbered 14 is abstract.

The rulings on the admissibility of testimony are free from error, except in the particular considered in the outset of this opinion.

Reversed and remanded.