# Louisville & Nashville Railroad Co. v. Baker.

*Action against Railroad Company by Employé to recover Damages for Personal Injuries.*

1. *Action against railroad company for personal injuries; admissibility of evidence tending to identify defective car.*—Where, in an action by a brakeman against a railroad company to recover damages inflicted while he was uncoupling cars, there is an issue as to the character of defects in the draw-heads of the car alleged to have inflicted the injury complained of, and a witness testifies that the next day after the accident a car of the same description as the car shown to have inflicted the injury was brought into defendant's repair shops, from the direction of the place of the accident, with a draw-head defective in the same respects the plaintiff testified the draw-head of the car which injured him was defective, and that there were indications on said car that such defects had existed for some time, the testimony of said witness is not inadmissible on the ground that his testimony did not identify such car as being the car which injured plaintiff; the testimony of the witness, when taken in connection with the testimony of the other witnesses, tending to identify it as the same car, and the facts testified by him affording some ground for the jury to so infer.

2. *Same; injuries from defective appliances.*—It is the duty of a railroad company to keep its way, works, machinery or plant connected with or used in its business in safe and good condition, and an employé may recover damages for injuries resulting from defects in their condition, unless he knew of such defects, and failed, in a reasonable time, to give notice thereof.

3. *Same; negligence of engineer moving train while brakeman was between cars.*—In an action by a brakeman against a railroad company for personal injuries, alleged to have been caused by the negligence of the engineer, where the evidence of the plaintiff is to the effect that just before going between the cars to uncouple them he signalled the engineer to stand still, and that at the time he gave the signal the engineer was looking at him, and that his fellow-brakeman, whom the engineer testified signalled him soon after the plaintiff went between the cars to give "slack," was in an opposite direction from the plaintiff, any signal to move the train which was not made or authorized by the plaintiff was improper, and the engineer, knowing the perilous position occupied by the plaintiff, was negligent in obeying such signal; and charges to the jury which are predicated upon the duty

[Louisville & Nashville Railroad Co. v. Baker.]

of the engineer to move the engine and the train in obedience to such signal given him, but which failed to hypothesize the propriety of such signals, are erroneous and properly refused.

4. *Same; negligence in making inspection of car; when question should be submitted to the jury.*—In an action against a railroad company by a brakeman to recover damages for personal injuries, alleged to have been inflicted while the plaintiff was uncoupling cars, where there is an issue formed as to whether the defendant was negligent in not discovering a defect in the drawhead of one of the cars plaintiff was trying to uncouple, which allowed the dead-woods to come together, and the defendant's inspectors testified to facts which, if true, showed that their inspection was careful, and such as was made upon certain other well regulated railroads, but there was other evidence tending to show that the alleged defects of the car could have been discovered by a certain mode of inspection which the defendant's inspectors did not adopt, a charge which instructs the jury that "under the evidence in this case, you can not find that the defendant was guilty of negligence in the matter of the inspection of the car, which the plaintiff was attempting to uncouple when he was injured,". is erroneous, as taking away from the jury the right to pass upon the credibility of the evidence of the witnesses relating to such inspection, and was rightfully refused.

5. *Same; same; length of time defect existed immaterial.*—Where, in an action against a railroad company by a brakeman to recover damages for personal injuries, alleged to have been inflicted by reason of a defective condition of the draw-head of the car which the plaintiff was attempting to uncouple, there was evidence upon which the jury might have concluded that the defect in the said car arose from or had not been remedied owing to the negligence for which defendant was responsible, a charge which instructs the jury that "unless the jury can determine from the evidence how long before the injury to the plaintiff the defects in the coupling apparatus arose, they can not find that the defendant was not negligent in discovering and remedying them," is erroneous, since the jury might justly have inferred from the evidence that the defect had existed a sufficient length of time for their continuance to be attributable to defendant's negligence.

6. *Same; same.*—In such a case, a charge which instructs the jury that "even though the jury may believe from the evidence that the defendant's inspectors were negligent in the manner of their inspection of the train the plaintiff was breaking on when injured, they must find for the defendant," is erroneous and properly refused, in that it assumes that there was no evidence tending to show that the defects complained of existed at the time of the inspection, made by defendant's inspectors, and such assumption was not well taken.

APPEAL from the City Court of Birmingham.

Tried before the Hon. H. A. SHARPE.

This was an action on the case, brought by the appellee, John H. Baker, under the Employer's Liability Act, against the Louisville & Nashville Railroad Company, to recover for personal injuries, alleged to have been caused to plaintiff, who was an employé of the defendant, while uncoupling cars constituting a part of a train on the road of the defendant. As the case was presented to the jury, the complaint contained three counts ; the first count in the complaint as originally filed having been withdrawn. The second count averred in general terms the duty of the defendant to carefully manage and operate its train while plaintiff was between the cars, so as to avoid injury to him ; and that this duty was neglected, and that such neglect caused the injury to plaintiff. The third count attributed the injury to the fact that the engineer in charge of the locomotive attached to the train carelessly and negligently put the train in motion whereby the injury complained of was inflicted. The fourth attributed the injury complained of to the defective condition of one of the cars which the plaintiff was attempting to uncouple, in that the draw-head was in a defective condition ''by reason of the absence of the usual and proper appliances to prevent the draw-head of said car from giving way and being pushed under said car,'' and that this defect had not been discovered or remedied by reason of the negligence of the defendant. Defendant pleaded the general issue and contributory negligence.

It was shown by the evidence, that the plaintiff was in the employ of the defendant as a brakeman on a freight train ; that on January 21, 1892, while so employed, it became his duty at Ishkooda, a station on the defendant's road, to go between two cars of the freight train upon which he was working to uncouple them ; and that while he was between the cars and grasping the coupling pin, the cars were suddenly pushed forward by the engine, the draw-head gave way, and his hand was caught between the pin and the car and crushed.

The testimony for the plaintiff tended to show that at the time of the accident the engine was on a curve in the track of the defendant's road, and the engineer was so situated that nothing obstructed his full view of plaintiff and the cars which plaintiff went in between to uncouple. The plaintiff, as a witness in his own behalf,

testified that as he left the engine to go to the front of it, he told the engineer to hold it at a stand still, and that just as he went between the cars he signalled the engineer to "hold up", and that he went between the cars in full view of the engineer. The evidence for the plaintiff also tended to show that the draw-head gave way by reason of the absence of the back "follow-plate," which keeps the draw-head from shoving back.

At the time of the accident, Galligher and Harrington were the two other brakemen on the freight train. The evidence for the plaintiff further tended to show that after the engine stopped, and just after the plaintiff went in between the cars to uncouple them, there was no signal given by any one to move the train. As relevant to the condition of the car, and the probable time it had been out of order, the plaintiff introduced one Taylor as a witness in his behalf, who testified that he was a car inspector in the employ of the defendant; that on the next day after the injury, or the day following, a car of the same description as the one shown to have inflicted the injury was brought into the shops of the defendant at Bessemer, a few miles from the place of the injury, from the direction of Ishkooda; that said car was a "crippled car;" that the back follow-plate was gone from it, and that dents and bruises on the "deadwoods" indicated that the draw-head had been jamming against it for some time. The defendant objected to the testimony of the witness Taylor, and moved to exclude it from the jury, on the ground that it was not connected with the car that caused the injury. The court overruled the objection, and the defendant excepted.

The testimony for the defendant was in conflict with that of the plaintiff in reference to the giving of signals. The engineer, who was in charge of the engine of the train upon which the plaintiff was a brakeman, testified that he did not see Baker go in between the cars to make the uncoupling that resulted in his injury, and that Baker did not give him a signal at that time to stand still; and that he got a signal from either Galligher or Harrington to come ahead and give slack before he moved the engine, and that in obedience to such signal he moved the engine seven or eight feet.

There was also testimony introduced in behalf of the defendant, tending to show that the car inspectors in-

spected the cars composing the train on which the injury was caused, before the train left the yard of the defendant, on the morning of the accident; that they "looked at the drawheads both top and bottom, and found no defects in them."

Among the charges given by the court at the request of the plaintiff was the following : (2). "It was the duty of the defendant to exercise reasonable care to have and to keep its cars in proper condition, so that they could be uncoupled with reasonable safety, and plaintiff had a right to assume, unless he had information to the contrary, that defendant had performed its duty in this respect." The defendant separately excepted to the giving of this charge, and also separately excepted to the court's refusal to give each of the following written charges requested by it : (1). "That if the jury believe from the evidence that while the plaintiff was between the cars, for the purpose of uncoupling them, another employé of the defendant gave the engineer of defendant a signal to let the slack on, and the engineer, in obedience to such signal, moved his engine and train in a proper way, and in the usual way to give plaintiff the slack so as to enable him to pull the pin to uncouple the cars, the engineer was not guilty of negligence in so doing." (2.) "After receiving a signal to come ahead from the brakeman, Galligher, if the jury believe that the engineer did receive such signal, the engineer had the right to assume that the plaintiff, though between the cars, was in a position of safety between them from any danger that would be occasioned by moving the train forward in obedience to such signal." (3.) "Under the evidence in this case, you can not find that the defendant was guilty of negligence in the matter of the inspection of the car which the plaintiff was attempting to uncouple when he was injured." (4.) "If the jury believe from the evidence that the engineer received from the brakeman Galligher a signal to come ahead to give the plaintiff slack, so as to enable him to pull the pin, after the plaintiff had gone between the cars, and that the engineer in obedience to said signal moved his train forward with no more force than was necessary to give such slack, and that the plaintiff was injured thereby, then the jury must find for the defendant." (5.) "If the jury believe the evidence, they must find

for the defendant uuder the third count." (6.) "If the jury believe the evidence, they must find for the defendant under the fourth count." (7.) "Unless the jury can determine from the evidence how long before the injury to the plaintiff, the defects in the coupling apparatus arose, they can not find that the defendant was negligent in not discovering and remedying them." (8.) "If the jury believe from the evidence that going between the cars to couple or uncouple them, facing the engine, was an improper way for plaintiff to have gone between them, and if the jury believe that the plaintiff did so go between them, and was thereby injured, then the plaintiff was guilty of contributory negligence." (9.) "Even though the jury believe from the evidence that the defendant's inspectors were negligent in the manner of their inspection of the train the plaintiff was breaking on when injured, they must find for the defendant under the fourth count."

There was judgment for the plaintiff, assessing his damages at $1,500. The defendant appeals and assigns as error the ruling of the court upon the evidence in failing to exclude the testimony of the witness Taylor; the giving of the second charge asked by the plaintiff, and the refusal to give the several charges requested by defendant.

HEWITT, WALKER & PORTER, for appellant.—1. Charge No. 2 requested by the plaintiff should not have been given. It is true that an employé has the right to assume that the master has provided him with proper machinery and appliances; but there is a corresponding duty on the part of the employé to examine the machinery, appliances, &c. before he can have actual information of the defects. Especially is this true where the defect exists, not in the appliances with which they have little to do, but in the appliances which they are required to use constantly.—*Ga. Pac. R. Co. v. Davis,* 92 Ala. 309; *M. & C. R. Co. v. Graham,* 94 Ala. 545; *L. & N. R. R. Co. v. Pearson,* 97 Ala. 211.

2. The first and fifth charges requested by the defendant should have been given.—*A. G. S. R. R. Co. v. Richie,* 99 Ala. 346.

3. The third charge asked by the defendant should have been given. The law is well settled that if an in-

spection is made in the manner in which it is usually made on other well regulated railroads, it is sufficient in law, though it fails to reveal the specific defect complained of.—*L. & N. R. R. Co. v. Campbell*, 97 Ala. 147.

ARNOLD & EVANS, *contra.*—1. The law imposes upon the employer the duty of exercising reasonable care to keep its cars, ways, works and machinery &c. in proper condition, so that its employés can discharge their duties with reasonable safety ; and the brakeman performing his duty has the right, in the absence of knowledge or notice to the contrary, to assume that this duty imposed upon the defendant has been performed.—*L. & N. R. R. Co. v. Orr*, 91 Ala. 554 ; *L. & N. R. R. Co. v. Hawkins*, 92 Ala. 241 ; *Ga. Pac. R. Co. v. Davis*, 92 Ala. 309 ; *A. G. S. R. R. Co. v. Richie*, 99 Ala. 346.

2. The first charge asked by the defendant did not assert a correct proposition of law. It is not the law, if an engineer knew that the plaintiff was between the cars for the purpose of uncoupling them, yet, if another employé of the company, without being authorized, gave the engineer a signal to move the train, the engineer could do so without being guilty of negligence.—*A. G. S. R. R. Co. v. Richie*, 99 Ala. 346 ; *L. & N. R. R. Co. v. Hurt*, 101 Ala. 34.

3. The other charges requested by the defendant were properly refused.—*L. & N. R. R. Co. v. Hurt*, 101 Ala. 34 ; *A. G. S. R. R. Co. v. Richie*, 99 Ala. 346.

McCLELLAN, J.—The only exception reserved to the trial court's rulings on evidence which is insisted upon in the brief of appellant's counsel went to the court's refusal to exclude the testimony of the witness Taylor with reference to the defects of a car brought to the shop where he was employed, immediately after the injury to the plaintiff, from the direction of the place where the injury occurred, upon the ground that his testimony did not identify this car as being the one which injured the plaintiff. It will suffice to say that the evidence of Taylor when taken in connection with the evidence of other witnesses tended to show that the car which came to him was the car which the plaintiff was endeavoring to uncouple at Iskooda when he received the injury com-

plained of. The character of the car, the direction from which it came and the nature of the defects to remedy which it was brought to the shop go to show that it was the same car, were facts in evidence affording some ground for the jury to so infer, and the probative force of these facts was properly left to the jury.

The second charge given for the plaintiff states the law as declared by the statute itself and by the decisions of this court, i. e., that the employé may recover for injuries resulting from defects in the condition of the ways, works, machinery, or plant connected with or used in the business of the employer, unless he knew of the defect and failed in a reasonable time to give notice of it. Until he has such knowledge, he has a right to presume there are no defects.—Code, § 2590 ; *Ga. Pa. R. R. Co. v. Davis*, 92 Ala. 309 ; *L. & N. R. R. Co. v. Orr*, 91 Ala. 554 ; *L. & N. R. R. Co. v. Hawkins*, 92 Ala. 241.

The question in the case of the *Alabama Great Southern R. R. Co. v. Richie*, 99 Ala. 346, was whether there was any evidence tending to show that the engineer wantonly or willfully inflicted the injury upon Richie, the plaintiff. There is no such question in the case at bar, and we are unable to see how that case can have any bearing on this to the favor of the appellant, especially as we there found the engineer guilty of simple negligence, which is all that is charged against the engineer here. We feel, therefore, safe in saying that the first and second charges requested by the defendant can derive no support from anything that was said or decided in that case. And considering them upon principle and authority, we are clear to the conclusion that they were properly refused. If any signal was given the engineer in this case to move his engine while the plaintiff was attempting to uncouple two cars attached to the engine, it was not given by the plaintiff ; and there is no evidence that the signal so given was the proper signal to be given, nor is its propriety hypothesized in these charges. *Richie's Case*, 99 Ala. 346, *supra*, is an authority *against* the correctness of charges 1 and 2 on this state of evidence and in this form ; and the infirmity of the charges stands out in bolder relief when referred to the evidence of the plaintiff to the effect that before going between the cars he gave the engineer a signal to stand still, ''and went right in ; that at the time he gave the signal the engine

was fronting him and he could see the engineer and the latter was looking at him," while Gallagher, who it is claimed gave the engineer the signal soon after to "give slack," was behind the engine in the caboose. If this testimony presents the case truly—and the jury had a right to so find—we should unhesitatingly say that any signal to move the train not made or authorized by Baker, the plaintiff, would be an improper and negligent signal, and that the engineer was negligent in obeying any such signal not so made or authorized, knowing as he did that Baker was between the cars trying to uncouple them with a right to assume that they would not be moved while he was thus engaged. If Baker himself had given the signal for slack (as did Richie in the case referred to above), and the engineer in obedience to the signal had "moved his engine in a proper and usual way to give the plaintiff slack," (as Richie's engineer did not), he, of course, would not have been guilty of negligence; but this is not the case hypothesized in the charges by any manner of means. And charge 4 was well refused upon the same considerations.

Charge 3 requested by the defendant was an invasion of the province of the jury. There was evidence going to show that the alleged defects of the car could have been discovered by a certain mode of inspection which defendant's inspectors did not adopt. They testified to facts, it may be conceded, which if true showed that their inspection was careful and such as was made upon certain other well regulated railroads. But the court could not assume that the jury would believe them or take away from the jury the right to pass upon the credibility of their evidence, as the giving of this charge would have done.

With Taylor's testimony in the case, there was evidence upon which the jury might have concluded that the defects of defendant's car laid in the 4th count of the complaint arose from or had not been remedied owing to negligence for which defendant was responsible, and that there was a proximate causal connection between the defects and the injury. Manifestly, therefore, the general charge for defendant on the 4th count was properly refused. Nor was it necessary for the jury to find *how long* the defects had existed: they may have justly inferred from the evidence that they had existed a sufficient

[German Security Bank v. McGarry.]

length of time for their continuance to be due to defendant's negligence, without being at all able to say what period of time had elapsed from the date at which they arose to the date of the injury.  Charge 7 was, therefore, bad.

Charge 8 predicates a conclusion upon the belief of the jury that the plaintiff was injured in consequence of his facing the engine while between the cars, of which there is no evidence.  The charge is abstract.

. · Charge 9 was asked upon the assumption that Taylor's evidence was improperly in the case, and hence that there was no evidence tending to show that the defects existed at the time of the inspection.  These assumptions not being well taken, the charge was properly refused.

Affirmed.

