# Alabama Great Southern Railroad Co. *v.* Ellis.

*Action against Railroad Company by Employe to recover Damages for Personal Injuries.*

1. *Action against railroad company by employe; charge of court to jury.*—In an action against a railroad company by an employe to recover damages for personal injuries, in his com-

[Alabama Great Southern Railroad Co. v. Ellis.]

plaint the plaintiff avers that he suffered the injuries complained of by reason of the negligence of a person [naming him] in the employment of defendant and entrusted by defendant with superintendence, and while in the exercise of such superintendence, in that said person negligently caused or allowed plaintiff to be knocked, jolted or caused to fall from one of defendant's cars, or negligently caused or allowed one of said cars to run upon or against plaintiff, it was shown by the evidence that the person named in the complaint as the superintendent in the employment of the defendant had charge of the switching crew of which the plaintiff was a member and was superintending the switching of cars. Two of said cars which were to be sent to the shops for repairs were "kicked" on the main line, which was up grade. The person superintending the switching had ordered plaintiff to catch and hold these cars so as to keep them from running back. There was evidence tending to show that plaintiff got on the cars just as they began to run back, and attempted to hold them by means of a defective brake; that while he was so engaged and without notice to him, other cars were, under the order of the person superintending the switching, run up the main line and violently struck the car plaintiff was on causing him to fall to the track where he suffered the injuries complained of. *Held*: That under the evidence in such case, the question as to whether the said person entrusted with superintendence was negligent in causing the second lot of cars to be run up the main line, was proper to be submitted to the jury, and that it was not error for the court at the request of the plaintiff to instruct the jury that they could consider any evidence "tending to show that the two cars which were kicked on the main line were defective and if the jury believe from the evidence that the foreman Eason [the person entrusted with such superintendence] knew of such defect."

2. *Same; same.*—In such a case it is proper for the court to refuse a charge at the request of the defendant which instructs the jury that if they believe the evidence they should not find that the person entrusted with superintendence "was guilty of negligence in running the engine and balance of the train on to the main line at the time of the collision."

3. *New trial; when properly refused; appeals.*—When the evidence adduced on the trial of a case is conflicting, the trial court's refusal to grant a new trial on the ground that the verdict is contrary to the evidence and contrary to law, will not be

36c

reversed, unless, after allowing all reasonable presumption of its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince the court that it is wrong and unjust.

APPEAL from the Circuit Court of Jefferson.

Tried before the Hon. A. A. COLEMAN.

This was an action brought by the appellee, James Ellis, against the Alabama Great Southern Railroad Company, to recover damages for personal injuries.

The complaint contained five counts. At the defendant's request, the affirmative charge was given as to each of the counts except the second, but as one of the charges reviewed on the present appeal is predicated on the averments of the first count, it is deemed proper to set out said count in full, as well as the second count.

The first count was as follows: "First count. Plaintiff claims of defendant twenty thousand dollars as damages, for that theretofore, to-wit, on the 21st day of December, 1899, defendant was operating a railway known as the Alabama Great Southern Railroad, together with a certain engine and certain cars upon a railway and a certain yard in or near Birmingham, Jefferson county, Alabama; that on said day, plaintiff was in the service or employment and engaged in or about said business of defendant in said yard, plaintiff was knocked, jolted or caused to fall from one of said cars, and one of said cars ran upon or against plaintiff, and as a proximate consequence thereof plaintiff's leg was so badly mashed, bruised, or otherwise injured that it was afterwards amputated above the knee, and plaintiff was made sore and sick, and suffered great mental and physical pain and was crippled and disfigured for life, and was rendered for a long time unable to work and earn money, and was rendered permanently less able to work and earn money, and his health and physical stamina were greatly and permanently impaired, and he was put to great trouble, inconvenience and expense for medical attention, medicine, care and nursing in or about his efforts to heal and cure his said wounds and injuries. Plaintiff alleges that he

suffered said injuries and damages by reason and as a proximate consequence of a defect in the condition of the ways, works, machinery or plant used in or connected with the said business of defendant, which said defect arose from or had not been discovered or remedied owing to the negligence of defendant or of some person in the service or employment of defendant and entrusted by it with the duty of seeing that said ways, works, machinery or plant were in proper condition, viz.: The brakes for stopping or controlling the motions of said car which ran upon or against plaintiff as aforesaid were old, worn, broken or otherwise improper for the purpose."

The second count adopted the preliminary averments of the first count and then averred as follows: "Plaintiff further avers that he suffered said injuries and damages by reason and as a proximate consequence of the negligence of a person in the service or employment of defendant and entrusted by defendant with superintendence, whilst in the exercise of such superintendence, viz. defendant's foreman of the crew of which plaintiff was a member, to-wit, Will Eason, negligently caused or allowed plaintiff to be knocked or jolted or caused to fall from one of said cars as aforesaid or negligently caused or allowed one of said cars to run upon or against plaintiff as aforesaid."

The defendant pleaded the general issue, and by special plea set up the contributory negligence of the plaintiff.

The following facts were shown by the uncontradicted evidence: Plaintiff was a switchman in one of defendant's switching crews in Birmingham, of which crew Will Eason was foreman or conductor, having the control thereof, and appellee and the other members of the crew were required to conform to orders issued by said Eason. On the night of December 21, 1899, this crew with a switch engine took a lot of cars from the yards at Twenty-fourth street down to the yards at Eighth street for the purpose of switching out the flat cars, all of which were in a defective condition, and then taking said defective cars to the shops for repairs. At the place where appellee was injured there were four side tracks,

all on the north side of the main line and connected therewith. To separate the defective flat cars from the good cars in the train, and place them on the main line where they were wanted, it was necessary to run into and out of the side tracks several times, dropping or kicking the box cars on to the several sidings and kicking the flat cars on to the main line towards Ninth street. The main line at that point was slightly up grade towards Ninth street, the way the cars were kicked. When the switching train, consisting of 27 cars, first reached the Eighth street yards it ran on the second side track, and dropped certain cars from the rear of the train and appellee was left with them and ordered by Eason to go from there over to the main line and catch two flat cars, which it was intended to kick on to the main line somewhere opposite the cars with which appellee was left. After kicking the two flat cars up the main line, the train was moved forward and certain other cars were kicked on to No. 1 and No. 2 sidings, and then the train moved back on to the main line to put two other flat cars up the main line.

All these movements were made in obedience to Eason's orders. Just after the last two flat cars were put on the main line they collided with the first two which had been kicked up the main line, and which appellee had been ordered and was expected to catch and hold. At the time of the collision these two cars were rolling back towards Eighth street. Immediately after the collision appellee was found crawling across one of the tracks with his leg crushed. The switch engine used on that occasion had headlights at each end, which were burning, and at the time of the collision the only cars attached to the engine were flat cars. It was the duty of a switchman to stop a car he was ordered to catch with the brake if it would hold, and if it would not hold to find a chock or log or brick, and if they could not be found to give a signal to the train. When the last two cars were put on the main line the train was not running very fast.

The testimony in reference to how far the first two cars were kicked up the main line, and how long a time elaps-

ed between the kicking of the first two cars and the collission was conflicting.

There was some evidence on the part of the defendant tending to show that the plaintiff was not injured by the collision of the cars on the main line, but on one of the side tracks. The other facts of the case as adduced on the introduction of the evidence are sufficiently shown in the opinion.

The court at the request of the plaintiff gave to the jury the following written charge: (A) "Notwithstanding the first count of the complaint is not to be considered, yet the jury may in considering the second count, consider the evidence, if any, tending to show that the two cars which were kicked on the main line, were defective, if the jury believe from the evidence that the foreman Eason knew of such defect."

The defendant duly excepted to the giving of this charge, and also separately excepted to the court's refusal to give the following charges requested by it: (1.) "If the jury believe the evidence, they will return a verdict for the defendant." (3.) "If the jury believe the evidence, they cannot find a verdict for the plaintiff under the second count of the complaint." · (4.) "I charge you if you believe the evidence, you can not find that Will Eason was guilty of any negligence of which the plaintiff can complain in this action." (13.) "I charge you that if you believe the evidence, you can not find that Eason, the foreman, was guilty of negligence in running the engine and balance of the train on to the main line at the time of the collision."

There were verdict and judgment for the plaintiff, assessing his damages at $2,591.66. The defendant moved the court to grant it a new trial, upon the ground that the verdict was contrary to the evidence and contrary to the law, and that the court erred in its rulings upon the charges requested. This motion was overruled, and the defendant duly excepted.

The defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

A. G. & E. D. SMITH, for appellants.

BOWMAN & HARSH, *contra.*—The court properly refused the general affirmative charge requested by the defendant.—*Bir. R. & E. Co. v. Pinckard,* 124 Ala. 372; *White, McLane & Morris v. Farris,* 124 Ala. 462; *L. & N. R. R. Co. v. York,* 128 Ala. 307.

The motion for a new trial was properly overruled. The rule of this court is that the lower court should not set aside the verdict of the jury on the ground that it was against the weight of the evidence, "where there is not a palpable failure of the evidence to support the finding of the jury." It is also considered by this court that the refusal of the court below, who had full opportunity to observe the demeanor and appearances of the witnesses upon the stand, to disturb the verdict, is an additional reason why the verdict should stand.—*Jones v. Tucker,* 31 So. Rep. 21; *Cobb v. Malone,* 92 Ala. 630; *T. C. I. & R. R. Co. v. Stephens,* 115 Ala. 463; *Taylor v. Corley,* 113 Ala. 586; *L. & N. R. R. Co. v. Bernheim, Bauer & Co.,* 113 Ala. 495.

SHARPE, J.—Defendant's foreman, Eason, having charge of its switching crew, including plaintiff, was superintending the switching of cars in a switching yard in the night time. Two flat cars which were to be sent to the shop for repairs were taken from a side track and "kicked" on the main line along an up-grade. Eason had ordered plaintiff to catch and hold those cars so as to keep them from running back towards the point from which they were kicked. There was evidence tending to show the cars did run back some distance; that plaintiff got on them about the time they began the retrograde movement, and attempted to hold them by means of a defective brake, that while he was so engaged, and without notice to him, other cars were, under Eason's immediate supervision and order, run up the main line, and that the same violently struck the car plaintiff was on causing him to fall to the track and be injured.

Under the evidence the question of whether Eason was negligent in causing the second lot of cars to be run up the main line under the circumstances, was proper to be

submitted to the jury under the second count of the complaint. The determination of that question depended on whether to a reasonably prudent man in Eason's position, that action would have appeared as involving a probability of injury to plaintiff. If such was the case, the duty rested upon Eason of adopting a course calculated to avoid injury, and a failure to discharge that duty, if it existed, was negligence. The conditions existing at the time of, and the circumstances attending, the accident, were, so far as disclosed by the evidence, proper to be considered by the jury, for only in the light of such conditions and circumstances could the jury judge of the propriety of Eason's conduct or of the plaintiff's conduct, which under the pleas of contributory negligence had also to be passed on.

Defects in the cars plaintiff was sent to hold, though not declared on in the second count as existing through negligence, were yet a condition which, according to some evidence, made it difficult for plaintiff to control the retrograde movement of those cars, and that fact if known to Eason was conducive to show he ought to have been mindful of such difficulty and ought, if the cars were obscured by darkness, to have made a special investigation of their whereabouts before running other cars in their direction. Moreover, there are pleas to the second count which attribute fault to plaintiff in failing to hold the cars, and which, therefore, invited consideration of such defects under that count.

The foregoing leads to the conclusion that no error was committed in giving charge A for plaintiff or in refusing charges requested by defendant.

As to whether plaintiff's injuries were caused by the collision of cars, the evidence does not accord in tendency. Paintiff in testifying, affirmed that they were so caused, and no other witness professed to know the cause. There is evidence of circumstances from which it might be uncertainly inferred that he was injured by something occurring on a side track, but neither on this nor on any other vital matter in dispute does the evidence so preponderate in favor of the defendant as to show that the trial court erred in overruling the motion for new trial.

Judgment affirmed.