## STATE OF MARYLAND,

Use of Carrie V. Culler, Widow of Morris W. Culler, Deceased, Use of Walter J. Culler, et al.,

*vs.*

## STANDARD OIL COMPANY,

A Body Corporate.

*Death by negligence: burden of proof.*

The uncontradicted evidence showed that a decedent, an adult, had been properly instructed (by his employer) how to run the employer's freight elevator, which was of standard make and in good working order, and showed that the decedent had used it a number of times, and had stated, "that he thoroughly understood the operation of it"; he was found one day killed, in the elevator, which had dropped; no one saw the accident, and there was no evidence, direct or otherwise, as to its cause, or as to how it was produced: *Held,* that a prayer withdrawing the case from the jury was correct.                                    p. 410

A party charging negligence as the ground of action must prove it.                                                p. 411

Juries can not be allowed to make mere conjectures or speculations the foundation of their verdicts.                    p. 411

If there be no evidence upon which a rational conclusion may be based in support of the claim of the plaintiff, the case should be withdrawn from the jury.                              p. 411

*Decided January 12th, 1916.*

Appeal from the Circuit Court for Allegany County, (Henderson, J.), to which county the case had been removed from the Circuit Court for Washington County.

The facts are stated in the opinion of the Court.

The cause was argued before Boyd, C. J., Briscoe, Burke, Thomas, Pattison, Urner and Stockbridge, JJ.

*Frank G. Waggaman* (with whom was *J. Lloyd Harsh-man* and *Albert A. Doub,* on the brief), for the appellants.

*Benjamin A. Richmond* and *Henry H. Keedy, Jr.* (with whom were *Chas. A. Little* and *Walter C. Capper,* on the brief), for the appellee.

BRISCOE, J., delivered the opinion of the Court.

This was an action instituted in the Circuit Court for Washington County, but removed to Allegany County for trial. The suit was brought by the State, for the use of the wife and children of Morris W. Culler, an employee of the defendant, who was killed on the 14th of April, 1913, while in charge of and operating an elevator, in use at the warehouse of the defendant at its plant in Hagerstown, Maryland.

The declaration contains ten counts, and each one avers that the death of Culler was caused by the alleged negligence, want of care and default of the defendant, and without neglect or fault of the deceased.

The defendant is a body corporate and owns a large three-story warehouse in Hagerstown used for the purpose of storing and delivering therefrom coal oil, gasoline and other petroleum products, in the business in which it was engaged.

The deceased was at the time of the accident which caused his death an employee of the defendant, and was in charge of a freight elevator called a Bates Hand-Power Elevator, which was used and operated for the purpose of transferring barrels of oil from one floor or story of the warehouse to another. He was engaged on the morning of the accident in transferring barrels of oil from the third to the first floor and in taking empty barrels to the second or the third floor. No one saw the accident and the only person in the building at the time was the superintendent of the warehouse, who was in his office on the first floor. He heard the elevator fall, and on reaching the elevator, found Culler dead, lying in the elevator with his face to the south, toward the front door of

the elevator and his back against the barrel of oil. The elevator floor was broken near the platform and the cable was off the wheel at the top of the elevator.

At the trial of the case there were three exceptions reserved to the rulings of the Court. The first and second relate to its rulings upon testimony, and the third to the granting of the defendant's prayer, at the conclusion of the plaintiff's testimony, withdrawing the case from the consideration of the jury, and directing a verdict for the defendant.

From a judgment, on the verdict, in favor of the defendant, for costs, this appeal has been taken.

There was clearly no error in the ruling of the Court, in permitting the question to be asked and answered, as set out in the first exception. The witness Poole, the superintendent of the defendant company, was called as a witness for the plaintiff. He testified he had given the deceased certain instructions as to operating the elevator. He was then asked, upon cross-examination, to state what those instructions were. The question was entirely proper, upon cross-examination and the Court committed no error in permitting the question to be asked and admitting the evidence, under the answer, to the question, as propounded.

The second and third exceptions practically present the same and the controlling question in the case, and that is, whether the Court was right in granting the defendant's first prayer, which instructed the jury that under the pleadings in the case, there was no evidence legally sufficient to entitle the plaintiff to recover and the verdict must be for the defendant.

In this case the declaration contains ten counts. The first, and the other counts, except the second, eighth, ninth and tenth as stated by the appellee in his brief, charge as the basis of the suit that the death of Culler, was caused by the negligence of the appellee in not providing a safe and proper elevator with which to work; that it did not furnish him with safe appliances and machinery by which the elevator was controlled; that the elevator was negligently and carelessly

constructed; that it was equipped with a dangerous appliance for control; that it was equipped with unsafe and insufficient counter-weights, and that it was not equipped with extra safety devices for control of speed. The second count charges that the appellee did not furnish necessary co-employes to assist the deceased in operating the elevator. The eighth count charges that the appellee did not sufficiently warn and instruct the deceased as to the dangers in operating the elevator. The ninth count charges that the appellee misled and deceived the deceased as to the character and safety of the elevator, and the tenth count charges that the appellee gave the deceased wrong advice as to how to operate the elevator, and as to how to put on the brakes on the brake wheel or release the same.

An examination of the record, in this case, will show an entire absence of proof as to how the accident happened or what caused it. There were a number of theories and proffers made, in the course of the trial, but there was no evidence whatever to support or sustain them. No one saw the accident and there is no evidence directly or otherwise as to what caused the accident or what produced it.

The witness Poole, the superintendent of the appellee, testified, that he employed the deceased for general work around the plant. He went to work on the 3rd day of April, 1913, and he had been engaged at work there eleven days. He was killed about 8 o'clock in the morning. He testified as follows: "I found him on the elevator with one barrel of oil; the elevator was down on the lower floor; there are practically three floors in the building; the first floor is on the ground; I heard the noise of the elevator coming down and knew it was an unusual noise and went out and found him; I knew the elevator was running away or falling, it was an unusual speed; the first thing Mr. Culler did the morning of the accident was to open the office and sweep it out; the next thing he did was to bring two turns of oil down of two barrels each; he emptied the barrels of oil into five gallon special cans and after that he came into the office and asked

what he should do, and I told him to go upstairs and bring
more oil down, and he said all right and started out; I heard
the unusual noise of the elevator about four or five minutes
after I told him to bring more oil down; I was in the office
at the time, which is about 50 or 60 feet away from the
elevator; the elevator is located on the east side of the build-
ing, the office is in the northeast corner; you can hear the
elevator go up and down as you sit in the office; I heard it
go up and down that morning; after I told him to bring the
oil down it was only a few minutes until I heard him walk
up the steps and then the elevator went up and then I heard
the crash; he was lying in the elevator with his face towards
the south and his head toward the north and his back up
against the barrel of oil and his face toward the front door
of the approach of the elevator; the barrel of oil was lying
down on the side; I think Mr. Culler was dead when I found
him—he didn't make any move at all; as soon as I heard the
unusual noise I hurried out of the office to the elevator; I
had to walk 30 or 40 feet from the office before I could see
the elevator; several of the boards of the elevator floor were
bursted up on the side along the edge of the platform; the
brake irons were intact on the elevator frames; the safety
appliance was broken; the cable was off the wheel upstairs
and the counterweight out of the top of the box."

The uncontradicted evidence shows that the deceased had
been properly instructed how to operate the elevator, and had
used it a number of times in bringing down barrels of oil from
the third to the first floor, and had stated "that he thoroughly
understood the operation of it.   The elevator was a Bates
Hand-Power Freight Elevator, was in good working condi-
tion and had been operated on the morning of the accident
by the deceased, in transferring barrels of oil, from the sev-
eral floors, and had been run by the deceased and others prior
to the accident, with perfect safety, in the work for which
it had been used.

There was no evidence to sustain any of the theories or
charges set out in the various counts in the declaration, as

to the cause of the accident or in what manner it occurred, or to show any connection between, the cause of the accident and the failure of the defendant to perform any duty that it owed the deceased, which in any way contributed to cause the accident.

The Court below was clearly right in granting the defendant's motion, to exclude the evidence covered by the second exception.

This evidence had been admitted, in connection with certain proffers upon the part of the plaintiff, to show by proof how the accident occurred, and as there was an absence of proof in this respect, the evidence was properly excluded.

The case at bar falls within the rules of law announced by this Court in numerous cases, where theories as to the cause of the injury complained of based upon mere speculation or conjecture, is sought to take the place of affirmative proof, to fix liability upon a party charged with the commission of a wrongful act.

In *Charles* v. *United Rwy. Co.,* 101 Md. 187, it is said: "In the case at bar the evidence goes no further than to show that an injury was inflicted on the husband of the equitable appellant, without showing how it occurred, or that any act of the appellee caused it. To have permitted the jury under such circumstances to infer that negligence on the part of the defendant produced the injury, would have been to destroy the law as plainly laid down in the adjudged cases."

The case of *B. & O. R. R. Co.* v. *Savington,* 71 Md. 599, is directly in point. JUDGE ALVEY, in delivering the opinion in that case, said: "In matters of proof we are not justified in inferring from mere possibilities the existence of facts; there must be proof of the essential facts to fix liability upon a party charged with the commission of a wrongful act. And even a scintilla of evidence, or a mere surmise that there may have been negligence on the part of the defendant, will not justify the Court in submitting the case to the jury. There must be, in a case like the present, some reasonable evidence of well defined acts of negligence, as the cause of

the injury complained of; and therefore, it is incumbent upon the plaintiff to give some affirmative evidence of the existence of such negligence before he can ask that the case be submitted to the jury. *Whart. Neg.,* sec. 421, and cases there cited. Or, as clearly stated by the Supreme Court in *Parrott* v. *Wells Fargo & Co.,* 15 Wall. 524, 537: 'No one is responsible for injuries resulting from unavoidable accidents whilst engaged in a lawful business. A party charging negligence as a ground of action must prove it. He must show that the defendant by his act or by his omission has violated some duty incumbent upon him, which has caused the injury complained of.' Juries cannot be allowed, however great the deference conceded to their province, to make mere conjecture or speculation the foundation of their verdicts. If there be no evidence upon which a rational conclusion may be based in support of the claim of the plaintiff, the case should be withdrawn from the jury and to do this is the preliminary duty of the Court."

The principle as settled by the cases cited, has been applied and followed in numerous other cases in this Court. *Benedict* v. *Potts,* 88 Md. 52; *B. & O. R. R. Co.* v. *Black,* 107 Md. 666; *B. & O. R. R. Co.* v. *Logsdon,* 101 Md. 368; *Stewart & Co.* v. *Harman,* 108 Md. 454; *Casparis Stone Co.* v. *Boncore,* 121 Md. 449.

There were other questions discussed in the argument of the case, and they have been carefully considered by us, but as the testimony offered here, in any aspect of the case, falls far short, of what is required in like cases, to entitle the plaintiff to recover, we find it unnecessary to prolong this opinion, by a review of them.

The Court below was correct in granting the defendant's prayer, at the conclusion of the plaintiff's testimony, which instructed the jury that under the pleadings, there was no evidence legally sufficient to entitle the plaintiff to recover, and the verdict must be for the defendant. The judgment of the Court below will be affirmed.

*Judgment affirmed, with costs.*