# Alabama Great Southern Ry. Co. *v.* Taylor.

### Injury to Servant.

(Decided April 16, 1916.  71 South. 676.)

1. **Master and Servant; Injury to Servant; Jury Question.**—Where the evidence tended to show that the alleged defect had existed for a sufficient time to warrant the inference, either that it was known or would have been discovered by due care, it was a question for the jury whether there was negligence attributable to defendant either in the existence of a defect in the condition of the ways, works, etc., or a failure to remedy the defect, the action being under subdivision 1, § 3910, Code 1907.

2. **Same.**—In such an action whether the method adopted by defendant's roundhouse superintendent in bringing a car down the incline, which resulted in injury to plaintiff, was such a method as due care and reasonable precaution approves, was a question for the jury, under the evidence in this case, the action being under subdivision 2, § 3910, Code 1907.

3. **Same; Superintendents; Acts.**—The evidence examined and held to warrant the conclusion that the railroad employee who directed that a car be brought down an incline in a certain manner was a superintendent within subdivision 2, § 3910, Code 1907.

4. **Appeal and Error; Harmless Error; Repetition.**—Where a witness testified without objection that he had never brought a car down an incline with less than four or five men to let it down, the subsequent allowance of a question by plaintiff to the same witness, eliciting a repetition of that testimony, was harmless to defendant.

5. **Damages; Permanent Injury; Jury Question.**—Where plaintiff had suffered an injury that according to every reasonable probability would continue throughout the remainder of his life, the evidence tending to show that he was less perfect nine months after the injury, that he complained of pain; that two of his ribs had been broken, etc., it was for the jury to determine whether plaintiff had been permanently injured.

6. **Same.**—Where a railroad is liable for the permanent injuries of its servants, the damnifying consequences resulting from such injuries are of the element of recoverable damages.

7. **Same.**—Even an entire absence of data from which to determine the amount of damages to a railroad employee from permanent injuries in service will not deprive him of his right to recover nominal damages.

8. **Same; Instruction.**—A charge that if the jury were reasonably satisfied from the evidence that plaintiff was permanently injured as alleged, as a proximate consequence of the negligence complained of, they might award him such sum as would reasonably compensate him for such permanent injury, was proper, as advising the jury on the hypothesis that there was evidence warranting compensatory damages, for permanent injury; the plaintiff having been before the jury, and there being evidence tending to show a decrease in his earning capacity indicated in the reduction of wages received by him after his injury, although the mortality tables were not introduced.

APPEAL from Jefferson Circuit Court.

Heard before Hon. C. B. SMITH.

Action by W. T. Taylor against the Alabama Great Southern Railroad Company. From a judgment for plaintiff, defendant appeals. Affirmed.

The ninth count, after setting out the business of defendant and the relationship between plaintiff and defendant, alleges that plaintiff was in the service or employment of defendant as an engine repairer, and while engaged in the discharge of his duties as such employee the plaintiff received the wounds and injuries heretofore alleged; and plaintiff avers that his said wounds and injuries were the proximate consequence of and caused by reason of the negligence of a certain person, namely, Mr. Sims, who was in the service or employment of the defendant, and who had superintendence intrusted to him while in the exercise of such superintendence. Said negligence consisted in this, viz.: The said Mr. Sims negligently caused or permitted a railway car to be propelled down the track and against the tank under which plaintiff was working with such violence as to injure plaintiff as aforesaid. The other facts sufficiently appear.

A. G. & E. D. SMITH, for appellant. ERLE PETTUS, for appellee.

MCCLELLAN, J.—Action by servant against the master for injuries received while engaged in the master's service. The case went to the jury under the issues made by count 1 and amended count 9. There is no insistence upon error in overruling the demurrer to count 1. There is argument for error in overruling the demurrer to amended count 9. The legal sufficiency of the count is affirmed by *A. G. S. Ry. Co. v. Choate*, 184 Ala. 636, 64

South. 78; *L. & N. R. R. Co. v. Jones,* 130 Ala. 456, 30 South. 586; *Reiter Mfg. Co. v. Hamlin,* 144 Ala. 192, 40 South. 280.

(1) Count 1 was drawn to state a cause of action under the first subdivision of the Employers' Liability Act (Code, § 3910); and the defect in the condition of the ways, works, etc., to which plaintiff's injury was ascribed, was alleged to be in the "brakes on one of defendant's said cars." The sufficiency of the count is conceded. That there was such a defect in the condition of the car was proven. Whether there was negligence attributable to the defendant either in the defect's existence or in the failure to remedy or repair the defect was made a jury issue by phases of the testimony tending to show that the alleged defect in the condition of the brakes had existed for a sufficient length of time to warrant the inference either that the existence of the defect was known, or, had due care and prosecution been observed, the defect would have been discovered, or would have been remedied.— *L. & N. R. R. Co. v. Baker,* 106 Ala. 624, 17 South. 452; *A. G. S. R. R. Co. v. Yount,* 165 Ala. 537, 544, 51 South. 737; *Birmingham R. Mill Co. v. Rockhold,* 143 Ala. 115, 42 South. 96. The defendant was not entitled to the general affirmative charge forbidding a recovery under count 1.

Count 9 as amended was drawn to state a cause of action under the second subdivision of the Employers' Liability Act (section 3910), and attributed the plaintiff's injury to the negligence of one Sims, who, it was alleged, was then exercising the authority conferred on him as a superintendent for the defendant.

(2, 3) When injured plaintiff was engaged in repairing the brake rigging under the tank of a locomotive located for the purpose on track No. 1 about defendant's roundhouse. The track at that point was so constructed as to make a pit about four feet deep and of a width the distance between the rails; this to allow workmen to conveniently get at their work underneath locomotives. An inclined track leading from the surface level (at a turntable) to a coal chute elevated approximately ten feet was used to move cars, conveying coal up to the coal chute, where they were unloaded. Between track No. 1, on which the locomotive stood, and the end of the track leading up the incline to the coal chute, was a turntable, which was capable of being so adjusted as to connect track No. 1 with the track to the coal chute by joining therewith a track on the turntable. There was evi-

dence tending, at least, to show that by W. D. Sims' direction the tracks were so connected over the turntable as to make a continuous railway from the top of the incline to the point at which the locomotive undergoing repair was located.   An empty coal car rested at the coal chute.   W. D. Sims directed a single subordinate, John Wheeler, to move the car down the incline.   The method contemplated was to "pinch" the car to a point where gravity would apply, and then with the hand brake to restrain the flight of the car down the incline.   The brakes on this car were defective; but no inspection at the time to determine their efficiency was made by Sims or by his direction.   The car was put in motion by Wheeler; and gained speed as it went down the incline.   Wheeler undertook to hold the car with the hand brake, but that was ineffectual.   The car, passing down the incline, followed the track across the turntable and collided with the locomotive under which plaintiff was at work, inflicting the injury of which he complains.   There was evidence tending to show that proper prudence was not observed by committing the control of the car, on the incline, to only one servant whose reliance to control the car was to be the hand brake; this by testimony suggesting to the judgment of a reasonably prudent man these methods: The letting down of the car with an engine to control its movement; the "chucking" of the car on the incline, thus allowing its gradual descent, four or five men being assigned and used to control the car in its movement down the incline.   In view of the circumstances disclosed by the evidence, it is quite clear that the evidence, and reasonable inferences therefrom, required the court to submit to the jury's decision the question whether the method adopted by Sims for bringing this car down the incline was such a method as due care and precaution approved.   According to phases of the evidence, the power and authority conferred on Sims with respect to the removal of emptied coal cars from the coal chute down the incline and their disposition thereafter justified the conclusion that Sims was a superintendent within the second subdivision of the Employers' Liability Act (section 3910).—*A. G. S. R. R. Co. v. Ellis*, 137 Ala. 560, 34 South. 829; *Dantzler v. C. & I. Co.*, 101 Ala. 309, 14 South. 10, 22 L. R. A. 361.

(4) The witness Lipscomb having theretofore, without objection, testified that he never brought a car down that incline with less than four or five men to let it down, no prejudice to·

defendant could have resulted from the subsequent allowance of a question (by plaintiff) to the same witness that elicited a repetion of the testimony just stated.

(5-7) Approximately nine months after the plaintiff was injured there was testimony tending to show: That plaintiff was physically less perfect than he was before the injury; that he complained of and suffered pains in his back and sides; that two of his ribs, healed by then, had been broken; that there was a depression over the liver—a depression the jury might have concluded was due to the breaking, or nature-wrought repair, of the ribs. Under the evidence, and reasonable inference deducible from the evidence, it was for the jury to decide whether, as alleged, the plaintiff was permanently injured; had suffered an injury that, according to every reasonable probability, would continue throughout the remainder of his life.—*Du Cate v. Brighton,* 133 Wis. 628, 114 N. W. 103, 105. If the defendant was found to be liable for plaintiff's injury, and if the jury concluded from the evidence that plaintiff was permanently injured, the damnifying consequences resulting from his permanent injury were of the elements of recoverable damages, and, in the entire absence of data from which to determine the amount of damage resulting from such permanent injury, the plaintiff was entitled to recover nominal damages.—*B. R., L. & P. Co. v. Wright,* 153 Ala. 197, 44 South. 1037; *B. R., L. & P. Co. v. Friedman,* 187 Ala. 562, 571-572, 65 South. 939. The court in the oral charge thus instructed the jury: "If you are reasonably satisfied from the evidence that the plaintiff is permanently injured as alleged in the complaint as a proximate consequence of the negligence complained of, you may award him such sum as would reasonably compensate him for such permanent injury."

(8) This instruction advised the jury upon the hypothesis that there was evidence warranting a finding of compensatory damages for permanent injury. The plaintiff was before the jury as a witness. There was evidence tending to show a decrease in plaintiff's capacity to work, as he did formerly, and of a decrease in his earning capacity, as that was indicated by the reduction of the wages he received for work after he was injured. The mortality tables were not offered in evidence for the jury's consideration on the issue of the pecuniary loss entailed by his permanent injury (if so)—the probable duration of the existence of the result of his permanent injury.—*B. R., L. & P. Co. v.*

[Birmingham Railway, Light & Power Co. v. Gray.]

*Wright, supra.* The failure to offer the mortality tables in evidence does not authorize the conclusion that there was no evidence before the jury from which the jury could form a judgment as to the probable duration of the permanent injury suffered by the plaintiff, if such injury was sustained by him. As is indicated by the reference heretofore made to the presence of the plaintiff before the jury and to the tendencies of the evidence touching the damnifying effect of his injury upon his capacity to work and to earn wages, it cannot be held that there was an entire absence of evidence bearing upon the damnifying effect of his injury, if his injury was found by the jury to be permanent.—*Mary Lee Coal Co. v. Chambliss,* 97 Ala. 171, 175, 11 South. 897.

This disposes of all the assignments of error insisted upon in brief for appellant.

No prejudicial error appearing, the judgment must be affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.