BAER BROTHERS, INC. *v.* KELLER

[No. 66, October Term, 1955.]

*Decided January 10, 1956.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*William H. Geppert,* with whom were *Gunter & Geppert* on the brief, for appellant.

*Thomas N. Berry,* for appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal by Baer Brothers, Inc., appellant, from a judgment against it, and in favor of Ross G. Keller, Sr., appellee.

On February 25, 1954, about 10 A. M., a collision occurred between appellant's truck and appellee's automobile, operated by appellee, near Cumberland, Maryland. No question is raised in this appeal as to the lia-

bility of the appellant. The question here is as to damages.

The appellant contends that the trial court should have granted its fourth prayer instructing the jury that they could not award damages for permanent injury and that the court should have incorporated in its charge appellant's fifth and sixth prayers. The fifth prayer concluded with the words "and if the jury find for the plaintiff, they cannot allow any damages for permanent injuries." The sixth prayer requested the instruction "that all the symptoms of plaintiff's alleged injury are subjective, that there is no evidence of any physical impairment or defect and no indication of its probable duration, then such injury is not of a permanent nature and the Jury may not allow damages for permanent injuries."

The question before us is whether the jury should have been instructed that there was no evidence from which they could find that the appellee had suffered permanent injuries.

In deciding whether the jury should be instructed that there was no evidence from which they could find that the appellee had suffered permanent injuries, the Court should resolve all conflicts in the evidence in favor of the appellee and should assume the truth of all evidence and such inferences as may naturally and legitimately be deduced therefrom which tend to support the appellee's right to recover. *Eisenhower v. Baltimore Transit Co.*, 190 Md. 528, 532, 59 A. 2d 313, and cases there cited. We will therefore recite the evidence in a light most favorable to the appellee.

The appellee testified as follows. His automobile was struck by the appellant, back of the front door. After he got out of his car he felt "all bruised up." He thought that "in a couple of minutes" he would be all right. The collision "bent everything in, the wheel and all." He was knocked up in the air. On cross-examination, when asked whether the State trooper asked him after the accident whether he was hurt, he replied: "I think he did. I won't say for sure. I said I am just shook up a

little bit, I don't think I am hurt." He said he "was a little stoved up." When he got home that evening he became sick in his stomach and had to go to bed. His neck and back hurt him all that night and he was unable to go to work. The next morning he went to see Dr. Murray, who prescribed rest, heat, and massage. His neck and back kept him awake night after night. About a month after the accident Dr. Murray had him admitted to the hospital where he was placed "in a skin traction." There he was given X-ray treatments for his back and neck. He stayed in the hospital for eleven days. The X-ray treatments did not help him. He had a collar or brace on his neck for twenty-eight days. He then took it off for about two hours each day. When his neck started hurting him again he would put the collar on. As long as he was wearing it, he was relieved, but after he took it off his back and neck ached him when he walked and also when he was trying to sleep at night. At the time of the trial on January 24, 1955, he was still wearing a brace which was a regular back support and which he wore all the time. Before the accident he was employed as a freight handler by the Baltimore and Ohio Railroad doing manual labor. He had not worked since the accident because his back and neck hurt him. Some mornings he could hardly get out of bed. At the time of the accident either the door struck his head or he hit his head on the dashboard. At the trial he indicated just where his neck and back hurt him.

At the request of counsel for appellant, appellee was examined by Dr. Zimmerman on October 14, 1954. He said that the X-ray examination showed no evidence of bone or joint injury or disease. He diagnosed appellee's disability as traumatic myocitis which is a sore muscle. He further stated: "And complains that he has pains in the left side of his back and when he walks a few steps it hurts. When he turns his head to the side he feels it clicking in his neck. I examined him and the man had pain when I pressed over the base of his neck and the back."

Dr. Murray testified that the appellee was his patient. He stated in reference to the accident on February 25, 1954, that the appellee came to him and told him about the accident. The patient told him that "he was rattled about in the car," strained his neck and back, hurt his left knee and was generally "roughed up." He had been treating him ever since that time. He sent him to the hospital for X-rays and also sent him to Dr. Rathbone for X-rays. He put him in the hospital for a rest and traction on his back and had him put in a collar to hold his neck and keep his head steady to relieve the pain. He had been giving him medicine to relieve the pain and relax his muscles. He said: "I don't think he is any better than he was eleven months ago when he was hurt." He testified that, in his opinion, appellee was not able to do any work at all. When asked the question whether appellee was permanently injured, he replied: "He won't be able to do any heavy work or hard work again. The injury to his neck has affected his left arm to a certain extent. He has numbness and tingling and a feeling of tingling in his fingers, and he can't use his left arm as well as he could, showing there must be some pressure on some of the nerve roots in the cervical region of the neck, that is, in the cervical region or the cervical spine. His x-rays, as I say, didn't show anything. Sometimes x-rays don't show things. He not only has that, but he has at times when he goes to turn his head, he has a distinct click in his neck, which would only be from or an arthritic condition, which the x-rays do not show and have not shown. What it hasn't, I don't know. That is the reason I had his neck x-rayed again in order to see whether it did show any arthritic deposits or any little pieces of bone chipped loose or something of that sort in the cervical vertebrae. Because the symptoms that he has with his neck, the pain running down his neck from the back and runs down over his shoulder on his arm, and his fingers get tingling and numb, would show there is a nerve injury present. He had had that for at least, that particular symptom, he has had that

for about five or six months, because I have been seeing him about every two or three weeks during the past— well, in fact, from the beginning of the time up till now. * * * He has not been able to rest well. According to his complaint he would wake up sometimes with violent headaches and pain in his neck and pain down his arm. He is wearing a brace on his back. He is not able to stoop down and twist himself about properly on account of the pain in his low back. The neck symptoms are the ones most exaggerated. He has had pain down his left leg showing some pressure, possibly on his sciatic nerve. This has all come on since his injury. He didn't have as much of this sort of thing when Dr. Mirkin examined him last August, but he has been progressively getting these symptoms right along since that time, showing that he has spinal injury somewhere, at least in the cervical region and in his low back. Now his knee has been all right, the left knee. He gets along with that all right after traction on it; it became better. But his back is still bad and he has had to wear this brace. He wears at times the collar for neck. When he wakes he gets very tired and his neck pains him, and that is certainly not normal. The x-ray shows no bone symptoms. I have known people who had a back broken and the x-ray didn't show anything. I don't put any reliance on x-ray of the spine. It doesn't seem they ever get what is right. A man may have a vertebra broken or cracked or something and the x-ray doesn't show it and he may have a disc that is injured and the x-ray doesn't show it. I have seen too many of these cases and I happen to know that." On cross-examination he stated that his diagnosis was the same as Dr. Mirkin. He further said he thought appellee had some bone injury which was not shown by the x-ray and that his neck had not shown any improvement. He further stated that the only way he knew that appellee had pain was because he so told him. "It doesn't show." From the length of time he would say that appellee certainly had some permanent injury. He further stated: "This man has stiffness of his back, lumbar

muscles to show that he has pain and that he had an injury. He has some rigidity of his lumbar muscles. They should be pliable. He should be able to stoop up and down properly and backwards and forwards, but he couldn't do that because he has some rigidity of the muscles."

Dr. Mirkin, to whom the appellee was sent by Dr. Murray and who was called as a witness by the appellant, testified that the X-ray films did not show any disease of the bones or joints. He said in his opinion the appellee "had sustained a traumatic myocitis of the lumbar and cervical regions. I will explain that a little bit. Myocitis means an inflammation of muscles and I followed that inflammation to the muscles of the neck and the muscles to the small of the back and I thought it was the direct result of some injury to the soft tissues, in those two regions rather than an injury to bones, joints, or major ligaments." This would not be disclosed by X-ray. When asked by the court whether he would say whether the injury was permanent or temporary, he replied: "If the man has that much pain even though he can't find x-ray of it to account for it, and even though I am willing to say, as of my examination, it was all soft tissue injury, all muscular injury, but he still persists in having pain, then I would say, assuming the man is telling the truth, that the pain persists that it is a permanent disability."

Appellant stresses the case of *Mangione v. Snead,* 173 Md. 33, 195 A. 329. There, a boy, nine years of age, was struck by an automobile while crossing a street in Baltimore City. The witnesses testified that the boy was knocked down and dragged for a short distance. He made no outcry, lay in the street unconscious, and was bleeding from his mouth and nose. Following the accident, there was evidence that his memory was poor and he got into mischief. The mother testified that before the accident, the boy was normal, had a good memory and his conduct at home and at school was good. The boy did not testify. This Court there held that his

condition was not of such a character as to permit the inference that it was not likely to change. The statement that the child had "possibly" a concussion of the brain was too indefinite and should have been stricken out. The only evidence as to the child's condition before the accident was that of his mother. There was no evidence legally sufficient to show that the boy's condition at the time of the trial was permanent in its nature nor could any such inference be drawn from the condition itself. The mere fact that he was stupid, if true, was not in itself sufficient. If the stupidity was congenital, it could be assumed that he would continue to be stupid. If it resulted from his injuries, it could or could not be permanent according to the physical effect of those injuries upon his mental and nervous organization. There was no admissible evidence as to what caused the stupidity at the time of the trial. In holding that the issue of permanent injury should not have been submitted to the jury, this Court said at page 51: "In other words, before it can be said that the effect of an injury is permanent, it must appear that it is caused by some condition caused by the injury which is not likely to change, but such an inference cannot be drawn from the condition itself, when it is accompanied by no physical impairment or defect, is subjective, and offers no intrinsic *indicia* of its probable duration."

In *Mt. Royal Cab Co. v. Dolan,* 166 Md. 581, 171 A. 854, relied on by the appellant, the doctor, who examined the appellee with reference to the injuries inflicted, stated that he was extremely nervous, suffering great pain, particularly at the back of his neck and across his shoulders which was due to the inflammation of those muscles which had been sprained. No damage to bone was revealed. There was no swelling, bruises, or other physical evidence of the injury. The doctor there testified that he would not attempt to say how long it would take for a complete recovery from the injuries sustained. This Court, in finding that the prayer taking the question of permanent injury from the jury should have

been granted, stated that a careful examination of all the testimony, not only failed to disclose any evidence of permanent injury resulting from the accident, but affirmatively established that the injuries received were temporary. In that case, the counsel for the plaintiff stated to the court during the trial that the plaintiff was not claiming any permanent injury. In *Cluster v. Upton*, 165 Md. 566, 168 A. 882, relied on by the appellant, there was testimony that the plaintiff sustained a fracture of a bone in his right hand and if any permanent injuries existed, they were there. The plaintiff testified that he had difficulty with his hand at the time of the trial eleven months later and had no grip in it. A finger was still crooked. The physician, produced by him, testified that the patient was unable to use the hand for six months during which time he was totally disabled and there were three weeks of partial disability. The man had complained of pain in his hand at various times and that such pain was possible. A physician, produced by the defendant, on the other hand, testified that he found no condition which would cause the man to complain of recent pain. This Court there held that there must be a reliable basis for the adjudication of permanent injury beyond mere conjecture or possibility and that it was doubtful that the testimony of the plaintiff of recent pain and of his physical complaints of pain was sufficient evidence for an inference of permanency. His physician went no further than to give his opinion that recent pain was possible. He testified to no permanent injury and was not asked for his opinion on that point. The evidence of the crooked finger did not cause either continued or partial disability. This court said as to the crooked finger: "it may not have amounted to a great deal, but the finding of permanency may have some foundation for it." The Court therefore concluded that there was no error in the instruction allowing a finding of permanent injury.

In *Hebner v. Powell*, 177 Md. 237, 9 A. 2d 232, on November 6, 1937, appellee, a woman, was injured in an

automobile accident. At the trial, which took place sixteen months after the injuries were sustained, the attending physician testified that the scars received by her were permanent, and that as far as he knew the plaintiff had recovered at the time of the trial. His conclusion, however, was qualified by the previous statement that the patient was extremely nervous, that her back was improved but she could not get around very well and continuously complained of her back. The appellee also testified as to constant pain in her back. She said that she was unable to fully perform her household duties. This Court there held there was uncontradicted evidence to show that she could not follow her usual avocation and that the trial judge properly refused an instruction that there was no evidence that the plaintiff had suffered any injury that would permanently impair her ability to follow her usual avocation. In *Mathiesen Alkali Works v. Redden,* 177 Md. 560, 10 A. 2d 699, appellee's truck was struck in the rear by appellant's truck. As a result appellee's head struck against a panel, a part of the truck cab. One doctor testified that as far as he could see from internal examination of the ear there was no injury. The ear specialist, to whom the appellee was referred, testified that he found the appellee had suffered a sixty percent loss of hearing in the left ear. This Court was there of the opinion that the evidence in the case was undoubtedly legally sufficient to support a finding of permanent injury. In *Alabama Great Southern R. Co. v. Taylor,* 196 Ala. 37, 71 So. 676, approximately nine months after the plaintiff was injured there was testimony tending to show that plaintiff was physically less perfect than he was before the injury; that he complained of and suffered pains in his back and sides; that two of his ribs, healed by then, had been broken; and that there was a depression over the liver, a depression the jury might have concluded was due to the breaking, or nature-wrought repair, of the ribs. Under the evidence, and reasonable inference deducible from the evidence, it was for the jury to decide whether, as alleged, the plaintiff was permanently injured, and had suffered

an injury that, according to every reasonable probability, would continue throughout the remainder of his life.

In the instant case we are of opinion that the testimony supporting appellee's claim for permanent injury is more than subjective. Among other evidence is the testimony of Dr. Murray that in his opinion appellee was no better eleven months after the accident, and that he was not able to do any work at all. He further stated that appellee had a distinct click in his neck, stiffness in his back and lumbar muscles; that there was rigidity in the lumbar muscles which should be pliable; and that on account of this rigidity appellee could not stoop down. These findings apparently were not based on appellee's claim of pain but on the doctor's examination of the patient. He definitely stated that appellee had some permanent injury. Like Dr. Mirkin, appellant's witness, and Dr. Zimmerman, he diagnosed appellee's trouble as traumatic myocitis of the lumbar and cervical regions. Dr. Mirkin stated that even if the pain was lessening and appellee was getting better, this did not necessarily indicate the absence of permanent injury and also, if the man was telling the truth that the pain persisted, he had a permanent disability. He further stated that he followed the inflammation to the muscles of the neck and to the small of the back. Apparently this diagnosis was not based alone on appellee's complaint of pain. There is no doubt here that at the time of trial appellee had inflammation of the muscles of his back. It is reasonable to suppose that a doctor could detect fake disability better than a layman. Even if there is a difference of opinion between doctors, a court is not justified in saying that the opinion of one or the other is worthless. That is a question for the jury. *Armour & Co. v. Leasure,* 177 Md. 393, 9 A. 2d 572.

We are therefore of opinion that the trial judge was correct in refusing to instruct the jury that there was no evidence from which they could find permanent injuries. The judgment will be affirmed.

*Judgment affirmed, with costs.*