WALTZINGER ET UX. *v.* BIRSNER ET AL.

[No. 75, October Term, 1956.]

*Decided January 17, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*Eugene A. Alexander, III,* with whom was *Walter V. Harrison* on the brief, for appellants.

*Paul Berman,* with whom were *Sigmund Levin, Melvin J. Sykes* and *Theodore B. Berman* on the brief, for appellees.

COLLINS, J., delivered the opinion of the Court.

Here are appeals from judgments entered in favor of the appellees, Lidie C. Birsner, Margaret H. Connor and Loma W. Tuttle, and against the appellants, August F. Waltzinger and Helen M. Waltzinger, in a trial before the court and a jury, for injuries sustained in an accident caused by the al-

leged negligence of the appellants in the operation, management, and control of their automobile.

Loma W. Tuttle, 81 years of age, one of the appellees and the mother of one of the appellants, August F. Waltzinger, on July 15, 1954, was living at a nursing home known as College Manor. She had been living for about ten months each year with her daughter in New York and spent about two months each year with the appellants. She came to visit the appellants in March, 1954. After she had been there about six weeks it was necessary for the appellants to take a business trip so they put Mrs. Tuttle in that nursing home. Mr. Waltzinger testified that prior to July 15, 1954, he had been sending his mother, at first $70.00, then $80.00, and finally $100.00 per month for her support. However, she was "very much in charge of her own affairs". After the accident she received some money from her husband, from whom she was apparently separated. Mr. Waltzinger also had helped Mrs. Connor "out with money" at various times before the accident. Testimony was offered that, prior to the accident, Mrs. Tuttle was admitted to Mercy Hospital in October, 1953. On October 25th she seemed confused and on November 7, 1953, from time to time she presented signs of senility. She was a charming old lady, moderately forgetful, on the whole remarkably well preserved, oriented as to time and place, exceedingly well groomed, and cooperative and interested in several things, including boxing.

The appellants owned a 1954 Cadillac sedan and on July 15, 1954, accompanied by the appellees, Lidie C. Birsner and Margaret H. Connor, sister and mother of the appellant Helen M. Waltzinger and visiting her at the time, went to a restaurant for dinner. After dinner at the restaurant those four drove out to see Mrs. Tuttle at the nursing home and drove into the driveway of the College Manor property. Mrs. Tuttle at that time was on the lawn and Mr. Waltzinger stopped the car on the left side of the driveway, which had a one percent down grade, thirty or forty feet from the office of the nursing home, located to the right of the car. Mrs. Waltzinger had been seated on the right front seat of the car. When Mr. Waltzinger brought his mother to the car, Mrs. Waltz-

112

inger got out and helped Mrs. Tuttle into the right front seat and then closed the door and got into the right rear seat. At that time Mr. Waltzinger walked to the office in order to report that he was taking his mother for a ride. As he was returning to the car he saw a Miss Wilson, whom he had taken for rides on previous occasions, looking with "longing eyes" at the car. He asked her if she would like to take a ride. When she agreed Mr. Waltzinger told her to get into the front seat. Whether Mr. Waltzinger was then in the car when he invited Miss Wilson to get in and then got out is very doubtful. However, there was testimony that he was on the ground to the left of the car when Miss Wilson got in the left front seat. He then went to the office to report that he was also taking Miss Wilson with him. At that time Mrs. Tuttle was seated on the right front seat, Miss Wilson on the left front seat behind the steering wheel, Mrs. Waltzinger on the right back seat, Mrs. Connor in the center of the rear seat, and Mrs. Birsner on the left rear seat. Mrs. Waltzinger testified that she believed she said to Miss Wilson: "Move over and make room for Mr. Waltzinger." While Mr. Waltzinger was in the building the car started to "creep" and went slowly down the driveway. Mrs. Waltzinger opened the right back door in order to get in the driver's seat and pull up the brake, as she could not climb over the back seat with the two passengers in front. As she put one foot down, ready to step out, the automobile started "real fast" and Mrs. Waltzinger was dropped on the ground. Mr. Waltzinger, in the office, heard screams and rushed out. The car then "flashed" down the slight grade with his wife "either running behind it or somewhere in the vicinity". The car struck posts on the left side of the driveway and stopped in a depression against a tree 75 to 100 feet from the place it started. The automobile was "pretty much wrecked".

As a result injuries were sustained by the appellees. From judgments entered for them, the appellants appeal. It is contended that there was no legally sufficient evidence showing that the proximate cause of the accident was attributable to any negligence on the part of the appellants, or either of them, and that their demurrer prayer should have been granted.

The appellants also specifically objected to the following part of Instruction No. 3 given to the jury, on the ground that there was no legally sufficient evidence that such were the facts:

> "The Court instructs the jury that if it finds from the evidence that on July 15, 1954, the plaintiffs as invited guests of the defendants, August F. Waltzinger and Helen M. Waltzinger, were seated in their automobile which was standing on a one per cent down grade upon a driveway of the College Manor Home in Lutherville, Baltimore County; and if the jury further finds that the defendant, August F. Waltzinger, without stopping the engine of the automobile or moving the selector lever from its position for forward movement, permitted another person whom he had invited to ride in the automobile to enter it through said door, and that the defendant, August F. Waltzinger, left the automobile with no one in control of it; and if the jury further finds that, while he was away from the automobile, it was caused, without any act or intervention on the part of the plaintiffs, to move forward upon the driveway with increasing speed and to strike guard posts along the roadway and finally to leave the roadway and collide with a tree, and that the plaintiffs thereby sustained injuries, without any want of ordinary care and prudence on the part of the plaintiffs directly contributing to produce their injuries, then the verdicts of the jury must be for the plaintiffs, Lidie C. Birsner, Margaret H. Connor and Loma W. Tuttle."

Of course, in deciding whether the demurrer prayer should have been granted, this Court should resolve all conflicts in the evidence in favor of the appellees, and should assume the truth of all evidence and such inferences as may naturally and legitimately be deduced therefrom, which tend to support the appellees' right to recover. *Baer Bros., Inc. v. Keller,* 208 Md. 556, 558, 119 A. 2d 410. We will therefore recite the evidence in a light most favorable to the appellees.

Mrs. Tuttle and Miss Wilson were not able to testify in the case. There was testimony that the automobile had hydra-matic transmission, which was controlled by a gear selector lever located directly under the steering wheel. This lever had the positions of neutral, reverse, low, and for forward motion, two drive positions. It was moved by reaching under the wheel, picking the lever up and pulling it into the new position. The accelerator to feed the gas was on the floor and Mr. Waltzinger admitted that it was quite easy in moving over to hit it. The Cadillac owner's manual, offered in evidence, provided in part:

"Your Cadillac Hydra-Matic drive will provide safe parking on hills or steep inclines. Simply turn the ignition key 'Off' when the selector lever is in 'Dr' or 'Lo'. Then raise and move the selector lever to 'R'. As an additional safety measure, apply the hand brake and toe in the front wheels to the curb. * * * To prevent a parked car from rolling on slight grades it is well to form the habit of setting the hand brake which is conveniently located to the left of the steering column. To apply this brake, merely step on the brake pedal and pull the hand brake handle straight back. It locks automatically. A 'tell-tale' light lights up when the hand brake and the ignition are on. To release the brake, rotate the handle left, and it will return to its normal position. When the handle pulls out more than five inches it should be adjusted by your Cadillac Dealer. When parking on hills, turn the wheels toward the curb, place the Hydramatic selector lever in 'R' Reverse, which locks the transmission, and apply the hand brake."

Mr. Waltzinger testified that he did not know, when he left the passengers in the automobile, whether he had the automobile brake on or in what position the gear selector was. He also admitted that it would be highly unlikely that Miss Wilson could have started the engine just in the act of moving over on the seat. He made the following answers to the following questions. "Q. Well, isn't this what probably hap-

pened, that you left your selector gear lever in drive position with the engine running and the brake not set, and, as Miss Wilson moved over, she touched the accelerator which caused the car to lurch forward? A. Well, certainly that set of events must have been there because otherwise the car wouldn't have gone flying by me the way it did. Q. So that is probably what happened in your opinion, is that correct, what I suggested in the previous question? A. Probably." He admitted that, if the automobile was left in gear without the brake on, and someone touched the accelerator, the car would move. He also admitted that he did not take the keys out of the car.

A Baltimore County Police officer testified that, when he arrived at the scene, he talked to Mr. Waltzinger and wrote down what he told him. He said the information in his official report came from Mr. Waltzinger. That report offered in evidence, without objection, states in part that Mr. Waltzinger "had parked his car with the motor running and in drive on College Manor property with four women seated in the car and a Miss Virginia Appleton Wilson F/W, 72, of College Manor Home for the Aged, was getting in the car from the driver's side and was sliding over to the middle of the car and apparently hit the gas pedal of the auto and sending it about 100 feet up the driveway and going down a slight embankment taking about four poles and then coming to a stop against a tree. Mr. Waltzinger was inside the building at the time the car started moving."

Code, 1951, Article 66½, Section 212, provides: "(Unattended Motor Vehicle.) No person driving or in charge of a motor vehicle shall permit it to stand unattended without first stopping the engine, locking the ignition and removing the key, or when standing upon any perceptible grade without effectively setting the brake thereon and turning the front wheels to the curb or side of the highway." Appellants contend that the automobile was not unattended when Mr. Waltzinger went into the office. This Court, in interpreting the above Section, said in *Lustbader v. Traders Delivery Co.,* 193 Md. 433, 439, 67 A. 2d 237: "The statute does not define 'unattended', but a reasonable interpretation is that it

means without any one present who is competent to prevent any of the probable dangers to the public. These dangers are different under different circumstances." It could hardly be contended that either Miss Wilson or Mrs. Tuttle, who were seated on the front seat, were competent to stop the automobile. It is evident that no one on the back seat was able to stop the car because Mrs. Waltzinger attempted to do so, but failed. According to Mr. Waltzinger's statement to the police, he did not comply with the standard set by Section 212, *supra*. Though it may be questioned whether this statute is applicable to a private roadway, we think that it states correctly the standard of due care which should be adhered to in a case such as this involving a roadway which visitors to a large convalescent home or home for the aged are invited to use.

Appellants rely on the following quotation from *Shafer v. State*, 171 Md. 506, 514, 516, 189 A. 273, where Judge Bond said: "And 'in matters of proof we are not justified in inferring from mere possibilities the existence of facts.' *Balto. & O. R. Co. v. State, use of Savington*, 71 Md. 590, 599, 18 A. 969, 971; *Culler v. Standard Oil Co.*, 127 Md. 405, 411, 96 A. 558. Proof directs a selection from among possibilities. *Regent Realty Co. v. Ford*, 157 Md. 514, 521, 146 A. 457; *Realty & Mtge. Co. v. Ulrich*, 164 Md. 666, 670, 165 A. 708. * * * 'There must be proof of the essential facts to fix liability upon a party charged with the commission of a wrongful act; and even a scintilla of evidence or a mere surmise that there may have been negligence on the part of the defendant will not justify the court in submitting the case to the jury. There must be, in a case like the present, some reasonable evidence of well defined acts of negligence, as the cause of the injury complained of.' " Mr. Waltzinger's statement to the police, which was admitted into evidence without objection, (*Chesapeake Co. v. Goldberg*, 107 Md. 485, 489, 69 A. 37), amounts to much more than a scintilla of evidence or a mere surmise of the facts set forth in the trial court's Instruction No. 3, *supra*. *Acme Poultry Corp. v. Melville*, 188 Md. 365, 372, 53 A. 2d 1; *Shelton v. State*, 198 Md. 405, 411, 412, 84 A. 2d 76. It was said in *American*

*Express Co. v. Terry,* 126 Md. 254, 261, 94 A. 1026: "It is not *per se* negligence to leave an auto truck unattended in a public street. It is the duty of one who leaves a machine unattended in the public street to exercise such care as a person of ordinary prudence would exercise under the circumstances." In reference to Code, 1951, Article 66½, Section 212, *supra,* it was said in *Hochschild, Kohn & Co. v. Canoles,* 193 Md. 276, 283, 66 A. 2d 780: "The driver of the appellant, who was in charge of the truck, permitted it to stand without stopping the motor, locking the ignition, and removing the key, and while his truck was upon a perceptible grade, he not only did not effectively set the brake, but there is considerable doubt whether his statement, that he turned the front wheels slightly to the curb, showed a sufficient compliance with the statute. The purpose of Section 192 [now Section 212] was either to prevent some unauthorized person from starting a car or to prevent the start of a car by gravity. In either case the object was the protection of the public. The result was to be accomplished not only by turning off the motor and locking the ignition and taking the key away, which would make it difficult for anyone except a mechanic to start the car, but also by the provision that the brakes must be set and the wheels turned to the curb, so that if the car, for any reason, should start of its own accord, it would strike the curb and this would operate as a brake or means of preventing any further motion." Here, although apparently there was no curb along this driveway, there were posts set at close intervals against which the car could have been parked. See *Storey v. Parker* (Ct. of App. of La., 1st Cir.), 13 So. 2d 88, where it was held that the direct and proximate cause of injury to a pedestrian, who was run over by an unoccupied automobile equipped with hydro-matic drive, was the action of the motorist in leaving it at a service station without setting the brake, and with the motor running, and the control lever in high. See 16 *A. L. R.* 2d 983 for cases holding that one leaving a parked, unattended automobile has the duty of securing it so that it will not move except by the intervention of some external cause not to be anticipated and guarded against. See also 16 *A. L. R.* 2d 1010,

*et seq.,* for liability of a defendant in leaving his automobile parked unattended with the motor running, which discusses the cases of *American Express Co. v. Terry, supra,* and *Hochschild, Kohn & Co. v. Canoles, supra,* among others.

The appellants further except to Instruction No. 3, *supra,* on the ground that the testimony ignored the fact that the automobile was caused to be started by an intervening agency, and only excepts the plaintiffs themselves, and that there was nothing in the instruction as to the fact that the automobile was started by an intervening agency and not by either of the defendants. For the same reason, they objected to Instruction No. 4, which follows:

> "The Court instructs the jury that if it finds from the evidence that the plaintiffs, Lidie C. Birsner, Margaret H. Connor and Loma W. Tuttle were injured by reason of the concurrent or successive negligence on the part of the defendants, August F. Waltzinger and Helen M. Waltzinger, and on the part of Miss Virginia A. Wilson, another invited guest in the automobile of the defendants, and that the negligence of each of these persons was a contributing proximate cause of the injuries to the plaintiffs, then all of such negligent persons, Mr. and Mrs. Waltzinger and Miss Wilson, are jointly and separately liable for any injuries proximately resulting from their joint negligence. It is no defense for one or more of such negligent persons to show that another of them was also negligent, that is to say, for the Waltzingers to show that Miss Wilson was also negligent. The degree or proportion of negligence which may be attributed to each of such persons guilty of negligence is not to be considered by the jury in arriving at its verdict."

Of course, the court's charge to the jury must be considered as a whole. *West v. Belle Isle Cab Co.,* 203 Md. 244, 250, 100 A. 2d 17, and cases there cited. The court further charged the jury as follows:

"I instruct you that the mere happening of the accident complained of raises no presumption of negligence on the part of defendants, but to entitle the plaintiffs, or either of them, to recover in this case the jury must be satisfied by a preponderance of the evidence that the accident sued on was caused by some act of negligence on the part of the defendant which was the proximate cause or proximate contributing cause of such accident, and if the jury find the sole proximate cause of the accident was some intervening cause without which the accident would not have occurred, your verdict must be for the defendants."

In *Restatement of the Law, Torts, Negligence,* Section 441, comment (c) on subsection (1) discusses dependent and independent intervening forces and states in part: "An independent force is one the operation of which is not stimulated by a situation created by the actor's conduct." Comment d under Section 441 (2) states: "The active operation of an intervening force may or may not be a superseding cause which relieves the actor from liability for another's harm occurring thereafter. * * * A force due to an act of a third person which is wrongful towards the other who is harmed may be only a contributory factor in producing the harm. If so, both the actor and the third person are concurrently liable. This is so, although the actor's conduct has ceased to operate actively and has merely created a condition which is made harmful by the operation of the intervening force set in motion by the third person's negligent or otherwise wrongful conduct." Of course, one cannot be said to be negligent merely because he fails to make provision against a happening which he could not be reasonably expected to foresee. *McVey v. Gerrald,* 172 Md. 595, 602, 192 A. 789, and cases there cited. It could hardly be held as a matter of law that one who leaves an automobile, having a hydro-matic transmission, with the motor running, and with the lever directly under the wheel, should not reasonably expect that a person sitting under that wheel might move the lever and step upon the ac-

celerator. That the negligent acts of the appellants were the proximate cause in this case, was certainly a jury question. In *Texas Co. v. Pecora,* 208 Md. 281, 293, 294, 118 A. 2d 377, gasoline tanks owned by the Texas Company had been left on a vacant lot. Four boys were playing on the lot and rocking the tanks back and forth. One of the boys took a lighted stick and went over to a puddle of gasoline running out of a tank and lighted it. There was a terrific explosion, as the result of which some of the boys were injured. This Court held that it could not say as a matter of law that the original negligence of the Texas Company was not the proximate cause of the injuries. Judge Kintner, for this Court, there said: "Proximate cause has been so often defined by this Court as not to make it necessary to resort to the decisions of other States. In *Pennsylvania Steel Co. v. Wilkinson,* 107 Md. 574, 582, 69 A. 412, Judge Burke said: 'The question of remote and proximate cause is often perplexing and embarrassing, and at times very difficult to determine. Cases may illustrate the question; but the Courts have never laid down any hard and fast rule upon the subject. It is to be decided upon common sense principles in the light of the surrounding facts and circumstances. "The true rule is, that what is proximate cause of an injury is ordinarily a question for the jury. It is not a question of science, or legal knowledge. It is to be determined as a fact, in view of the circumstances of fact attending it. The primary cause of a disaster, though it may operate through successive instruments, as an article at the end of a chain may be moved by a force applied at the other end, that force being the proximate cause of the movement, or as in the oft cited case of the squib thrown in the market place." *The Milwaukee & St. Paul Ry. Co. v. Kellog,* 94 U. S. 469.'

"In the *Wilkinson* case above the defendant was constructing a bridge over a highway. It allowed a rope to hang loosely from above. An unknown person dangled the rope about and struck the horse of the plaintiff who was driving through. The horse ran away and injured the plaintiff. It was held that the negligence of the defendant in allowing the rope to hang over the street was the proximate cause of the

injury. *Baltimore v. Terio,* 147 Md. 330, 128 A. 353; *Lashley v. Dawson,* 162 Md. 549, 160 A. 738; *Sun Cab Co. v. Reustle,* 172 Md. 494, 192 A. 292; *Armiger v. Baltimore Transit Co.,* 173 Md. 416, 196 A. 111; *Industrial Service Co. v. State,* 176 Md. 625, 6 A. 2d 372."

In *Sanders v. Williams,* 209 Md. 149, 152, 120 A. 2d 397, it was said: "As is true of primary negligence, one measure of contributory negligence is the need, in a given situation, to anticipate danger. Presence or absence of reasonable foresight is an essential part of the concept. One is charged with notice of what a reasonably and ordinarily prudent person would have foreseen and so must foresee what common experience tells may, in all likelihood, occur, and to anticipate and guard against what usually happens. On the other hand, one is not bound to anticipate every possible injury that may occur or every possible eventuality."

We cannot say in this case, as a matter of law, that the negligence of Mr. Waltzinger was not the proximate cause of the injuries here, and that the demurrer prayer of the appellants should have been granted. There was no exception to that portion of the trial court's instructions which stated in substance that if Mr. Waltzinger was guilty of negligence, Mrs. Waltzinger, as a co-owner of the car present at the time of the accident, would be liable as well as Mr. Waltzinger for the consequences of his negligence. There was likewise no challenge to the correctness of this ruling in this Court.

The appellants further contend that the suit of Loma W. Tuttle was not instituted with her knowledge or consent or on her behalf by anyone having authority to do so because the declaration alleged that in the future she would be totally prevented from performing any duty or engaging in any activity requiring normal use of her body, facilities, or senses; and that during the trial of the case it was testified that she did not even know she had been in an accident. When the appearance of an attorney is entered on record it is considered as done by the authority of the party. A presumption in favor of the authority of the attorney to appear arises from the mere fact of the appearance. This presumption is rebuttable, but the proof necessary to overcome it should be

full and clear. *Poe on Practice and Pleading, Tiffany* Ed., 1925, Sections 7 and 9. This point was not raised until the end of the plaintiffs', appellees', case by a motion for a directed verdict filed then and at the close of the entire case. In their brief the appellants cite no authority for this contention. According to *7 C. J. S.* 883, ordinarily an objection based on want of authority of an attorney should be made promptly or at the earliest opportunity and before a plea has been filed. 5 *Am. Juris.* 309, Section 82, states that the proper method of attacking an attorney's authority to make an appearance is by motion supported by an oath showing *prima facie,* at least, his want of authority. In this case general issue pleas were filed by the appellants and copies served upon the attorney for the plaintiffs. Also various stipulations were made between appellants' and appellees' attorneys. Yet the question was not raised until the end of the plaintiffs' case. There is in this State a strong presumption that the attorney who files suit does so with his client's authority. *Hager v. Abrahams,* 66 Md. 253, 7 A. 462; *Kelso v. Stigar,* 75 Md. 376, 24 A. 18; *Houston v. Wilcox,* 121 Md. 91, 88 A. 32; *Margos v. Moroudas,* 184 Md. 362, 40 A. 2d 816; *Brooks v. Brooks,* 184 Md. 419, 41 A. 2d 367; *Schnapper v. Yoe,* 194 Md. 573, 71 A. 2d 759. According to the record before us, Mrs. Tuttle has never been adjudicated incompetent. Furthermore, Mr. Waltzinger testified that his sister asked plaintiffs' attorney to file the suit and he does not know whether or not his mother so authorized his sister.

The appellants further claim that Loma W. Tuttle was not legally competent to maintain a suit for the medical, hospital, nursing, and institutional expenses, hereinafter referred to as medical expenses, incurred as a result of the injuries received in this accident. $5,000.00 of those expenses were paid from a policy of accident insurance carried by the appellants. Mr. Tuttle, from whom she apparently was separated, contributed some money toward those expenses, and the balance was paid by Mr. Waltzinger. In Mrs. Tuttle's case the declaration as to damages alleged that she "was put to expense for her hospitalization and for the services of the physicians and surgeons required to treat and administer to

her injuries * * *." There was no motion made to strike this allegation from the declaration and there was no objection made during the trial of the case to any of the evidence with regard to her medical expenses. In the motion for directed verdict offered at the conclusion of the plaintiffs' case and at the end of the entire case the appellants asked the court to direct a verdict in their favor, among other reasons, for the following: "The evidence shows that this Plaintiff is the mother of the Defendant, August F. Waltzinger, and is mentally incompetent, and that she at the time of the accident complained of and ever since has been under the care and custody of the Defendant, August F. Waltzinger, and was at the time of the accident complained of and now is wholly and totally supported and maintained by the said Defendant, August F. Waltzinger." The question as to the medical expenses of Mrs. Tuttle was not raised until after argument on the prayers and just as the trial judge was ready to charge the jury. At that time the attorney for the appellants moved that all testimony with reference to medical expenses for Mrs. Tuttle be stricken from the record, "on the ground that it has been disclosed that her husband, Mr. Tuttle, is legally responsible for them and has the legal right to sue the defendants to recover such medical, hospital, nursing and institutional expenses, and further that there is nothing to prevent the said Mr. Tuttle from instituting a suit on his own behalf to recover the same." This motion, made after the evidence had been admitted without objection, was denied by the trial judge. It came too late. *Darrin v. Whittingham,* 107 Md. 46, 55, 68 A. 269; *Travelers Ins. Co. v. Connolly,* 145 Md. 554, 567, 125 A. 900. Furthermore, the allegation in this motion is directly contrary to the above quoted allegations in the motion for directed verdict. The only evidence as to Mr. Tuttle paying any of those medical expenses is that he paid some of this expense. The balance was paid by others and Mr. Tuttle could certainly not recover for expenses not charged to or paid by him. Also the motion to strike all testimony as to medical expenses for Mrs. Tuttle on the ground that Mr. Tuttle was responsible for part was therefore too broad. As was said in *Hohman v. Hohman,* 164 Md. 594, 613, 165 A. 812:

"It is well settled that a judge is not required to go through the testimony to pick out testimony piecemeal which would come within such a general description." The only evidence being that Mr. Tuttle paid some of the expenses, it would be impossible to strike out any of the testimony relative to what he paid.

The trial judge instructed the jury that, if it found a verdict for Loma W. Tuttle, it should consider the reasonable value of the hospital, nursing, medical attendance and institutional care in the past as well as what would be incurred in the future, and that such damages were not to be reduced because of any money received by her under the defendants' accident policy. The exception made by the defendants to the charge of the trial judge permitting the jury to include the medical expenses of Mrs. Tuttle in her recovery was "for the reason that the evidence shows that the legal liability and the right to recover for such medical, etc., attention was in her husband, Mr. Tuttle." Therefore, we can only consider the specific grounds of objection distinctly stated. Rules of Practice and Procedure of this Court, Part 3, Item 3, Rule 6 (d), Appeal. There was no objection to that part of the charge on the ground that Mr. Waltzinger had paid part of the expenses and, therefore, that Mrs. Tuttle could not recover for those expenses paid by him. That Mr. Waltzinger had paid part of Mrs. Tuttle's medical expenses and, therefore, that she should not recover what he had paid, was not raised below in any way. Therefore, that question is not before us here. Rule 9, Rules of the Court of Appeals, Relating to Appeals Generally. In the case of *Sezzin v. Stark,* 187 Md. 241, 256, 49 A. 2d 742, it was stated that the husband was primarily responsible for his wife's medical expenses and that the wife could recover for medical expenses only where it could be shown that the wife, either expressly or impliedly assumed the obligation for the medical expenses or had paid for them. She was there allowed to sue for the medical expenses given on her credit alone. The wife was a married woman, living with her husband, and merely temporarily separated because of his services with the Armed Forces. In the instant case Mrs. Tuttle lived with her daughter ten months in the year

and with her son the remaining two months. The son and daughter apparently provided for her support. Also, apparently she was separated from her husband who contributed some money for her after the accident. The amount is not shown. The fact that a husband has incurred medical expenses and has paid them is merely a presumption which can be rebutted. 27 *Am. Jur., Husband and Wife,* Section 496. It has been held in a number of cases that this presumption does not apply where a husband and wife are not living together and the husband has not been maintaining his wife. *Lewis v. City of Atlanta,* 77 Ga. 756, 4 Am. St. Rep. 108; *City of Peru v. French,* 55 Ill. 317; *Lammiman v. Detroit Citizens' St. Ry. Co.,* 112 Mich. 602, 71 N. W. 153; *Winnett v. Detroit United Ry.,* 171 Mich. 629, 137 N. W. 539; *Paulos v. Koelsch,* 195 Minn. 603, 263 N. W. 913; *Loughrey v. Pa. R. R. Co.,* 284 Pa. 267, 131 A. 260.

The appellants further contend that it would be against public policy to permit a recovery by the appellee, Loma W. Tuttle, because of the family relationship existing between her and the appellants under all the circumstances of such relationship. They rely on the case of *Myers v. Myers,* 185 Md. 210, 44 A. 2d 455, which in no way seems to be helpful on the question here involved, and on *Schneider v. Schneider,* 160 Md. 18, 22, 23, 24, 152 A. 498, in which it was held that the mother of a minor son, being jointly with the father the natural guardian of the son, could not sue the son for injuries caused by his negligence because the ordinary position of parent and guardian of a minor and that of plaintiff seeking to recover from the minor were positions which cannot both be occupied by one person at one and the same time. The problem before us in this case is quite different. The appellants rely also on *Weyen v. Weyen,* 165 Miss. 257, 139 So. 608, 610, 856. There Mrs. Kate Weyen sued her son, Charles Weyen, and his wife for personal injuries inflicted upon her in a collision of a motor car driven by Mrs. Charles Weyen, in which Charles was also an occupant, and in which Mrs. Kate Weyen was riding as a guest of her son. Charles there contended that there was no liability against him because of the relationship of mother and son, a family

relationship, and such a suit would be contrary to public policy. The Court did not agree with this contention and stated in part: "In this case both parties are adults and each may be sued by the other, there being no question of control or services between them and each being a free and separate person having the right to sue and be sued." Here, both the mother and son are free and separate persons having the right to sue and be sued. There is nothing in the instant case to show that Mr. Waltzinger is entitled to the control of his mother or is entitled to receive any services from her. Compare *Mahnke v. Moore,* 197 Md. 61, 77 A. 2d 923. *Prosser on Torts,* 2d Ed., 1955, cited by the appellees, discusses, under Domestic Relations, Torts in the Family, the point here raised, and points out that there is great inconsistency and unsatisfactory reasoning in the various cases on this subject, particularly as to the civil liability of husband or wife or of parent or minor child to one another, the chief reason being that such tort actions would disrupt and destroy the peace and harmony of the home which is against the policy of the law. It is there pointed out that the common law conception of unity of legal identity of husband and wife had no similar conception of unity of legal identity in the case of parent and minor child. Here, of course, the son is not a minor. Also, the appellant testified that he had no feeling against his mother or any of his relatives, or even against the attorney for the appellees for bringing this suit.

As we find no error the judgments will be affirmed.

*Judgments affirmed, with costs.*